KELSEY, Judge.
The trial court convicted George Edward Raab of driving under the influence, his third or subsequent offense, in violation of Code § 18.2-266. See also Code § 18.2-270. On appeal, Raab claims the evidence obtained by the arresting officer should have been suppressed because the officer had no legal basis to detain him. After a panel of this Court rejected this argument in Raab v. Commonwealth, 49 Va.App. 638, 644 S.E.2d 78 (2007), Raab asked us to reconsider the matter en banc. Having agreed to do so, we now affirm Raab’s conviction.
I.
Under settled principles, we address the legal issues arising from a suppression motion “only after the relevant historical facts have been established.” Logan v. Commonwealth, 47 Va.App. 168, 171, 622 S.E.2d 771, 772 (2005) (en banc). On appeal, the facts developed in the trial court must be reviewed “in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.” Kyer v. Commonwealth, 45 Va.App. 473, 477, 612 S.E.2d 213, 215 (2005) (en banc) (citation omitted).
So viewed, the evidentiary record shows that a police officer patrolling Ocean View Avenue at about 12:40 a.m. noticed a few vehicles in a restaurant parking lot. The restaurant had “closed” and was “shut down” for the night, with all lights turned off. Posted signs warned that the “parking lot was for patrons only” and that “towing was enforced.” In prior *580 patrols, the officer had seen vehicles parked there after the restaurant had closed. Adjacent to the Chesapeake Bay shoreline, the parking lot was sometimes used after hours by people going to the beach despite the patrons-only restriction.
When the officer pulled into the lot, Raab began backing his vehicle out of a parking space. As he had on previous occasions when he suspected unauthorized vehicles in the restaurant parking lot, the officer stopped Raab “to inquire why he was there after the business was closed.” The officer immediately noticed an odor of alcohol coming from Raab. His eyes were glassy and red. Raab said he had just gone “for a swim,” but his hair and clothes were dry. After Raab failed various field sobriety tests, the officer arrested him for driving under the influence. A later breath test showed a .15 blood alcohol content, nearly twice the legal limit.
In the trial court, Raab moved to suppress the evidence on the ground that the officer unlawfully stopped him. Raab’s counsel acknowledged the officer “testified very credibly.” Counsel also admitted the restaurant was closed and its lights were off. He then cited the general trespassing statute, Code § 18.2-119, arguing that there can be no reasonable suspicion of trespassing here because the posted signs did not expressly say “no trespassing.” Only a “clear marking of no trespassing,” counsel continued, meets the “standard for being able to enforce the no trespassing law or the trespass offense.” “I don’t think we would have a case,” he conceded, if the posted signs had been “no trespassing” signs.
The trial court denied Raab’s motion to suppress. Because the posted signs specifically forbade access to “anybody but patrons,” the court held, the officer could reasonably suspect Raab of trespassing given that the restaurant had closed and turned off its lights. In response to this ruling, Raab entered a conditional guilty plea stipulating to the sufficiency of the evidence and reserving his right to appeal the denial of his suppression motion.
*581 II.
While an arrest requires probable cause, a mere investigatory stop requires only a “reasonable suspicion” that criminal activity “may be afoot.” United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (quoting United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989), and Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)). The likelihood of criminality “need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard” applicable in other contexts. Id. at 274, 122 S.Ct. at 751 (citing Sokolow, 490 U.S. at 7, 109 S.Ct. at 1585); see also Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464-65 (2003) (summarizing standard as a reasonable suspicion the individual “may be involved in criminal activity” (citation omitted)).
The possibility of an innocent explanation for the suspicious conduct does not necessarily forbid an officer from making a brief, investigatory stop. See Arvizu, 534 U.S. at 274, 122 S.Ct. at 751 (rejecting the “divide-and-conquer analysis”). Terry itself involved an officer observing Terry and his companions “repeatedly walk back and forth, look into a store window, and confer with one another.” Arvizu, 534 U.S. at 274, 122 S.Ct. at 751. “Although each of the series of acts was ‘perhaps innocent in itself,’ ” collectively they were suspicious enough that a reasonable officer had grounds to stop Terry and his companions for purposes of investigating the situation further. Id. (quoting Terry, 392 U.S. at 22, 88 S.Ct. at 1880-81). Reasonable suspicion “need not rule out the possibility of innocent conduct.” Id. at 277, 122 S.Ct. at 753 (citing Illinois v. Wardlow, 528 U.S. 119, 125, 120 S.Ct. 673, 676-77, 145 L.Ed.2d 570 (2000)). “Thus, there may be circumstances where wholly lawful conduct might justify the suspicion that criminal activity ‘may be’ afoot.” Richards v. Commonwealth, 8 Va.App. 612, 617, 383 S.E.2d 268, 271 (1989) (citations omitted). As one commentator has explained:
The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspi *582 cion of criminal conduct. Indeed the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to “enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.”
4 Wayne R. LaFave, Search and Seizure § 9.5(b), at 482 (4th ed.2004) (citations and footnote omitted). Given this practical focus, the Fourth Amendment bars only investigatory detentions based upon “inarticulate hunches” devoid of any arguably supportive factual basis. Terry, 392 U.S. at 22, 88 S.Ct. at 1880.
Equally true, the absence of probable cause plays no role in the Terry analysis. Given its animating principle of reasonableness, “the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.” United States v. Montoya de Hernandez, 473 U.S. 531, 544, 105 S.Ct. 3304, 3312, 87 L.Ed.2d 381 (1985) (quoting Adams v. Williams, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972)); see also Simmons v. Commonwealth, 217 Va. 552, 554, 231 S.E.2d 218, 220 (1977). To be sure, a “brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information” may represent the most reasonable response an officer can give under the circumstances. Simmons, 217 Va. at 554-55, 231 S.E.2d at 220 (quoting Adams, 407 U.S. at 146, 92 S.Ct. at 1923).
In this case, the factual circumstances justified a reasonable suspicion that Raab may have been trespassing. Code § 18.2-119 criminalizes trespass by those who go on the property of another “without authority of law” after “having been forbidden to do so” by a lawful possessor. The warning can be “either orally or in writing” or by “a sign or signs” posted by the lawful possessor. Code § 18.2-119. Nothing in the statute or in any interpretative caselaw requires, as Raab argues, that *583 posted signs use the expression “no trespassing” or similar talismanic warning forbidding access.
Here, the posted signs warned that permission to use the parking lot was reserved “for patrons only” and added that non-patrons could expect a “towing enforced” response by the restaurateur. No facts suggested Raab was a patron. At 12:40 a.m., the restaurant had closed and all of the lights were off. A restaurant closed to patrons cannot be patronized, particularly one with its lights off during nighttime hours. It reasonably follows that Raab was likely a non-patron subject to the restaurant’s patrons-only restriction on access to the parking lot.
Maybe so, Raab contends, but it is also possible he could have been the last employee leaving the restaurant that night turning off the lights on his way out the door. We do not deny this possibility. Truth be told, for all the officer knew, Raab could have been the restaurant owner himself calling in license plate numbers to the towing company. That the suspicion of trespassing could have been factually wrong, however, does not make it legally unreasonable.
The suspicious individuals walking up and down the sidewalk in Terry, after all, could simply have been innocuous, albeit overly energetic, window shoppers. But that hypothesis did not invalidate the Terry stop. See Sokolow, 490 U.S. at 9-10, 109 S.Ct. at 1586-87 (noting “Terry itself involved ‘a series of acts, each of them perhaps innocent’ ” that nonetheless warranted further investigation when viewed collectively (citation omitted)). Under the Fourth Amendment, “the relevant inquiry is not whether particular conduct is ‘innocent’ or ‘guilty,’ but the degree of suspicion that attaches to particular types of noncriminal acts.” Id. at 10, 109 S.Ct. at 1587 (emphasis added). And, in answering that inquiry, “common sense and ordinary human experience” take precedence over legal abstractions and rigid criteria. United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985).[2]
*584 Raab rejects this reasoning, arguing it has been displaced by a contrary view adopted in Ewell v. Commonwealth, 254 Va. 214, 491 S.E.2d 721 (1997). We disagree. In that case, an officer stopped a vehicle driving out of a residential apartment complex shortly after midnight. Unfamiliar with the vehicle or its driver, the officer noticed that the vehicle had been parked in an area known for drug dealing. Though a sign posted at the entrance of the apartment complex barred trespassers, nothing suggested the driver was a trespasser. Ewell held no reasonable suspicion of trespassing could arise under these circumstances.
We fail to see how the residential apartment complex in Ewell can be sensibly analogized to a closed, unlit commercial restaurant. Apartment complexes do not close for the night. Residents and guests come and go as they please. Restaurants, on the other hand, can and do close to everyone. Patrons do not come and go from a closed, unlit restaurant in the middle of the night. That fact alone, coupled with the patrons-only restriction, suggested Raab had no authority to be there. The holding in Ewell, therefore, warranted a different conclusion because it rested on fundamentally different circumstances—providing an apt illustration of the general rule that, “because the mosaic which is analyzed for a reasonable-suspicion or probable-cause inquiry is multifaceted, ‘one determination will seldom be a useful precedent for another.’ ” *585 Ornelas v. United States, 517 U.S. 690, 698, 116 S.Ct. 1657, 1662, 134 L.Ed.2d 911 (1996) (citation omitted).[3]
III.
Because the trial court did not err in denying Raab’s motion to suppress, we affirm his conviction for driving under the influence.

Affirmed.

. On brief, Raab contends the officer never explicitly testified that he stopped Raab to investigate a possible criminal "trespass”—his point *584 being that an articulable suspicion under Terry must be specifically articulated by the officer from the witness stand. Not so. "An action is ‘reasonable’ under the Fourth Amendment, regardless of the individual officer's state of mind, ‘as long as the circumstances, viewed objectively, justify [the] action.' ” Brigham City v. Stuart,-U.S.-,-, 126 S.Ct. 1943, 1948, 164 L.Ed.2d 650 (2006) (emphasis in original and citations omitted). "It is important to remember that 'we are not limited to what the stopping officer says or to evidence of his subjective rationale; rather, we look to the record as a whole to determine what facts were known to the officer and then consider whether a reasonable officer in those circumstances would have been suspicious.’ ” United States v. Brown, 232 F.3d 589, 594 (7th Cir.2000) (citation omitted). Consequently, the "police officer conducting a stop is not required to 'precisely and individually articulate the facts that added up to suspicion in his mind.' ” Id. (citation omitted).

. The same can be said of Harris v. Commonwealth, 262 Va. 407, 551 S.E.2d 606 (2001). The suspicion of trespassing was found unreasonable in Harris because the evidence merely showed ‘‘three persons standing and conversing near an apparent bus stop adjoining a public street at midday” in an apartment complex that forbid trespassers. Id. at 416, 551 S.E.2d at 610-11. The only circumstance suggesting the three were trespassing (in the middle of the day at an apparent bus stop) was that the police officers were not familiar with any of them. The facts of Harris, like Ewell, cannot be usefully analogized to a suspected trespasser seen after midnight in a parking lot of a closed, unlit commercial restaurant in which access has been expressly denied to anyone but patrons.