COURT OF APPEALS OF VIRGINIA

Present:   Judges Frank, McClanahan and Petty
Argued at Richmond, Virginia


DARRELL RAY FERRELL

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 2948-08-3            JUDGE ELIZABETH A. McCLANAHAN
                                                     DECEMBER 15, 2009
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
David A. Melesco, Judge

M. Lee Smallwood, Assistant Public Defender, for appellant.

Erin M. Kulpa, Assistant Attorney General (William C. Mims,
Attorney General, on brief), for appellee.


        Darrell Ray Ferrell appeals from his convictions for possession of marijuana, possession of

cocaine, possession of a firearm while in possession of cocaine, possession of a firearm by a felon,

and assault and battery of a law enforcement officer.  He contends the trial court erred in denying

his motion to suppress evidence.  We affirm the judgment of the trial court.

I.  STANDARD OF REVIEW

        To prevail on appeal Ferrell bears the burden to "show that the trial court's denial of his

suppression motion, when the evidence is considered in the light most favorable to the prosecution,

was reversible error."  Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003).

Although we review the trial court's application of the law *de novo*, Kyer v. Commonwealth, 45

Va. App. 473, 479, 612 S.E.2d 213, 216-17 (2005) (*en banc*), we defer to the trial court's findings

of fact taking care "'both to review findings of historical fact only for clear error and to give due

_____
        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

weight to inferences drawn from those facts by resident judges and local law enforcement officers,'"

Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (quoting Reittinger v.

Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000) (citation omitted)); see also Ferguson

v. Commonwealth, 52 Va. App. 324, 334, 663 S.E.2d 505, 510 (2008), aff'd, 278 Va. 118, 677

S.E.2d 45 (2009). "Thus, we must give 'deference to the factual findings of the trial court' and

'independently determine' whether those findings satisfy the requirements of the Fourth

Amendment." Kyer, 45 Va. App. at 479, 612 S.E.2d at 217 (quoting Whitfield, 265 Va. at 361, 576

S.E.2d at 464). We consider the evidence adduced at the hearing on the motion to suppress as well

as the evidence adduced at trial. Dodd v. Commonwealth, 50 Va. App. 301, 306, 649 S.E.2d 222,

224 (2007); DePriest v. Commonwealth, 4 Va. App. 577, 583, 359 S.E.2d 540, 542-43 (1987).

## II.  BACKGROUND

Sergeant Stuart Yeaman, a member of the Danville Police Department, was patrolling in an

unmarked van when he observed Ferrell pull the motorcycle he was driving to where Anthony

Scales was walking down the sidewalk.  Because Yeaman thought Scales was acting suspiciously,

he circled around the block, drove back to where Ferrell stopped his motorcycle, and saw Ferrell and

Scales in a grassy "covert area" next to a fence.[1]  Ferrell was kneeling down and Scales was

standing, looking over Ferrell's shoulder.  When Yeaman arrived, Ferrell and Scales "immediately"

started to walk away from each other.  While still in his van, Yeaman began talking to Scales as

Ferrell went back to his motorcycle, which was located about fifteen to twenty feet from Yeaman's

van.  Yeaman stepped out of the van and continued talking to Scales.  Scales told Yeaman "we're

---

[1] Yeaman described this area as a "vacant lot" at a place that was "all boarded up."

not doing anything" and began emptying his pockets, which contained only his identification and some change.[2]

In the meantime, Corporal C.S. Moorefield, Officer J.D. Barker, and other officers with the Danville Police Department arrived, having previously been called by Yeaman. Moorefield found an open beer in the grassy area where Ferrell and Scales had been together. Yeaman walked to the same grassy area and found a plastic baggie containing marijuana. Yeaman then told Moorefield and Barker that Ferrell, who was bent down next to his motorcycle, was not free to leave.[3] When Ferrell started to get on his motorcycle, Yeaman twice told him not to leave. After Ferrell placed his hands on the handlebars, removed his kickstand, and "tensed up as if he was going to leave," Yeaman put his hand on Ferrell's wrist and said, "No, sir. You're not going to leave. Go ahead and let's step off the motorcycle." Officer Barker grabbed Ferrell's other wrist. Ferrell then replied, "Okay. I'll get off. I'll get off." Ferrell put his kickstand down, stepped off his motorcycle, and "took off running." While Ferrell was running, a weapon fell from his person and hit the ground. When Ferrell bent down to get the weapon, Yeaman and Barker tackled Ferrell to the ground. During the struggle, Ferrell hit both Yeaman and Barker with the gun. As the struggle continued, Yeaman told Ferrell to "quit resisting" and he was "under arrest." The officers tazered Ferrell several times and finally cuffed him. When Yeaman searched Ferrell, he found a cigar containing marijuana and cocaine.[4]

---

[2] According to Scales, he ran into Ferrell by happenstance and Ferrell told Scales he needed to use Scales' cell phone because something was wrong with his motorcycle.

[3] Yeaman testified it took him "a couple of minutes" to deal with Scales before he walked over to Ferrell.

[4] During the hearing and trial, Ferrell denied having drugs or dropping a gun. He testified that he was never told not to leave or that he was under arrest.

Ferrell moved to suppress the drugs and gun, and the trial court denied the motion finding "the marijuana gave [Yeaman] articulable suspicion that criminal acts were afoot" such that Yeaman "had a right to approach [Ferrell] and detain him and talk to him about the marijuana he had just found."

## III.  ANALYSIS

Ferrell argues Yeaman's seizure of him was not justifiable by reasonable, articulable suspicion or probable cause.[5]

An officer may conduct a brief investigatory stop of an individual if he becomes aware of facts that "lead[] him reasonably to believe in light of his experience that criminal activity may be afoot" and that the person he detains is involved in it.  Terry v. Ohio, 392 U.S. 1, 30 (1968).  "[T]he likelihood of criminal activity [required for a Terry stop] need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."  United States v. Arvizu, 534 U.S. 266, 274 (2002).  Although Ferrell argues the record is silent as to Yeaman's need to detain him, Yeaman discovered narcotics in the same area where Ferrell had been kneeling down with Scales standing up looking over Ferrell's shoulder.  Ferrell and Scales were the only persons in the area, and Yeaman described the area as a vacant lot.  Yeaman had already determined that Scales had no drugs in his possession.  These facts gave Yeaman reasonable, articulable suspicion that Ferrell was engaged in criminal activity related to drugs and thus justified the seizure of Ferrell.[6]

---

[5] Ferrell's arguments are limited to the justification for the seizure of him while he was still on his motorcycle.  His contention is that the drugs and the gun would not have been discovered but for the initial seizure.  He does not argue the police lacked probable cause to arrest him after he "took off" and the gun fell from his person.  Nor does he argue the police lacked authority to search him pursuant to his arrest.

[6] When Yeaman told Ferrell he was not free to leave, he told Ferrell he was going to pat him down for drugs and weapons.  Whether Yeaman had grounds to conduct a pat down is not before the Court since Ferrell "took off" before that could happen.  In any event, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis."  Whren v. United States, 517 U.S. 806, 813 (1996); Robinson v. Commonwealth, 273 Va. 26, 37, 639

Contrary to Ferrell's contention, the officers' actions in grabbing his arms while he was on his motorcycle did not turn his temporary detention into an arrest. "Brief, complete deprivations of a suspect's liberty, including handcuffing, 'do not convert a stop and frisk into an arrest so long as the methods of restraint used are reasonable to the circumstances.'" Thomas v. Commonwealth, 16 Va. App. 851, 857, 434 S.E.2d 319, 323 (1993) (quoting United States v. Crittendon, 883 F.2d 326, 329 (4th Cir. 1989)), aff'd on reh'g en banc, 18 Va. App. 454, 444 S.E.2d 275 (1994). "When 'evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria.' The test is whether the police methods were calculated to confirm or dispel the suspicion quickly and with minimal intrusion upon the person detained." Washington v. Commonwealth, 29 Va. App. 5, 15, 509 S.E.2d 512, 517 (1999) (*en banc*) (quoting United States v. Sharpe, 470 U.S. 675, 685 (1985)). It is evident Yeaman detained Ferrell to investigate the presence of the drugs he found and it was reasonable for the officers to restrain him as they did, particularly in light of the fact he was preparing to leave the scene on his motorcycle after Yeaman twice told him to remain there.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

---

S.E.2d 217, 223 (2007) (holding that an arresting officer's "subjective motivation is irrelevant" (citation omitted)). Under settled principles, an officer's "action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" Brigham City v. Stuart, 547 U.S. 398, 404 (2006) (emphasis in original and citations omitted). Thus, a court does not limit itself "to what the stopping officer says or to evidence of his subjective rationale," Raab v. Commonwealth, 50 Va. App. 577, 583 n.2, 652 S.E.2d 144, 148 n.2 (2007) (*en banc*) (citation omitted), but considers what a reasonable, objective officer could have concluded from the totality of the circumstances.