COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Judge Elder and Senior Judge Willis
Argued by teleconference

COMMONWEALTH OF VIRGINIA

v.      Record No. 0143-11-4

CHARLES MATTHEW SANFORD

MEMORANDUM OPINION[*] BY
CHIEF JUDGE WALTER S. FELTON, JR.
JUNE 21, 2011

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeffrey W. Parker, Judge

John W. Blanton, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on briefs), for appellant.

Kevin J. Gerrity, Senior Assistant Public Defender, for appellee.


Charles Matthew Sanford ("Sanford") was indicted by the Circuit Court of Fauquier County

("trial court") for possession of a firearm by a convicted felon, in violation of Code § 18.2-308.2,

and buying/receiving a stolen firearm, in violation of Code § 18.2-108.1.  Prior to trial, Sanford filed

a motion to suppress statements he made during his custodial interrogation following his arrest.[1]

Sanford asserted that because the officers did not have probable cause to arrest him, statements that

he made during his custodial interrogation must be suppressed.  The trial court granted Sanford's

motion to suppress, ruling that there was no probable cause to arrest him.  The Commonwealth

appealed to this Court, pursuant to Code § 19.2-398(A)(2).  For the following reasons, we conclude

that the trial court erred in granting Sanford's motion to suppress.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Sanford filed an earlier motion to suppress the admission of the firearm into evidence.
Following a hearing on January 3, 2011, the trial court denied that motion.

On appeal by the Commonwealth of a trial court's pre-trial order granting a motion to suppress evidence, we view the evidence in the record in the light most favorable to the accused, the prevailing party below, granting to that evidence all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

At the suppression hearing, the evidence established that on January 12, 2010, after 9:00 p.m., Warrenton Police Officer D. Muse saw two vehicles in the parking lot of the closed Aquatic Center.[2] He knew that the parking lots and surrounding park were posted with signs stating that the roads were for Aquatic Center visitors only and that the park closed at dusk. These facts alone "justified a reasonable suspicion that [the vehicles and their occupants] may have been trespassing." Raab v. Commonwealth, 50 Va. App. 577, 582, 652 S.E.2d 144, 147 (2007).

> The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal -- to "enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges."

Id. at 581-82, 652 S.E.2d at 147 (quoting 4 Wayne R. LaFave, Search and Seizure § 9.5(b), at 482 (4th ed. 2004) (citations and footnote omitted)).

When Officer Muse approached the vehicles, he saw Sanford outside one of them. Bethany Oliver was in the driver's seat of that vehicle, and Sanford was putting gas into its tank. Officer Muse knew Sanford because of Muse's involvement in a prior investigation that had led to Sanford's conviction for a felony narcotics charge. He also knew Bethany Oliver and her relationship with Sanford.

---

[2] The Aquatic Center is a recreation center comprised of an indoor pool, outdoor soccer fields, and running areas.

While other officers were determining why the vehicles were in the parking lot, Officer Muse, a canine officer, walked his drug dog around Oliver's vehicle. The drug dog alerted to the odor of drugs emanating from that vehicle. Two officers at the scene then searched the vehicle for drugs. During the search of Oliver's vehicle, officers found a firearm, a holster, and bullets inside a black trash bag that also contained men's clothing that appeared to fit Sanford. Other bags and boxes were also found in the vehicle. Once the items were found in Oliver's vehicle, Officer Muse read her the Miranda[3] warnings. She waived those rights, stating she was helping Sanford move and that the items in the bags in her vehicle were his. She also said she knew he owned a gun, but that she "was not aware that it was inside the vehicle at the time." Sanford made no statement at the scene related to the gun.

Sanford was placed in handcuffs and taken to the police department. There, Officer Muse read Sanford his Miranda warnings. Sanford waived those rights, and asked to speak with two detectives with the Blue Ridge Narcotics Task Force. Thereafter, Sanford made incriminating statements, admitting that the gun found in Oliver's vehicle belonged to him and that he thought it was stolen when he acquired it.

Subsequently, Sanford filed a motion to suppress his statements to the police, including his admission that the gun found in a bag of men's clothing in Oliver's vehicle belonged to him. He conceded in his motion to suppress that he was a passenger in Oliver's vehicle.[4] However, Sanford argued that because his arrest was without probable cause, any statements he made to Officer Muse had to be suppressed as fruit of the poisonous tree. See Wong Sun v. United States, 371 U.S. 471 (1963) (evidence obtained as a result of an unlawful police action must be suppressed as "fruit of the poisonous tree"). The Commonwealth asserted that a reasonable

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

[4] At oral argument, Sanford's counsel acknowledged that concession.

officer viewing the totality of the events observed by Officer Muse would have probable cause to believe Sanford was committing a criminal offense, possession of a firearm by a convicted felon, and that the arrest of Sanford was lawful.

After hearing the evidence and arguments of counsel, the trial court granted Sanford's motion to suppress, stating:

> The actual gun that was located in the parked pickup was not tied at that time to [Sanford], nor was there constructive possession on his part. He did not admit to owning the gun in question at that time. And no verification was made as to the fact of the ownership, the source of Mrs. Oliver's knowledge, or her possible motives in ascribing this ownership to Mr. Sanford.
>
> In considering the totality of the circumstances, they are objectively insufficient to create the probable cause necessary to justify a custodial arrest by the officers at the scene.[5]

(Footnote added).

"Whether an officer has probable cause to arrest an individual in the absence of a warrant is determined under an objective test based on a reasonable and trained police officer's view of the totality of the circumstances." Brown v. Commonwealth, 270 Va. 414, 419, 620 S.E.2d 760, 762 (2005). "To determine whether probable cause exists, we 'will focus upon what the totality of the circumstances meant to police officers trained in analyzing the observed conduct for purposes of crime control.'" Id. (quoting Taylor v. Commonwealth, 222 Va. 816, 820-21, 284 S.E.2d 833, 836 (1981) (internal quotation marks omitted)). "[P]robable cause is a flexible, common-sense standard." Texas v. Brown, 460 U.S. 730, 742 (1983). "Probable cause exists where the facts and circumstances *known to the officer* warrant a man of reasonable caution in believing the suspect has committed an offense." Howard v. Commonwealth, 210 Va. 674, 678,

---

[5] The trial court's comments in announcing its ruling suggest that it doubted the credibility of Oliver's statements to Officer Muse. The court did not appear to focus on Officer Muse's knowledge that Sanford was a convicted felon whom he had investigated in the past or his knowledge of the relationship between Oliver and Sanford.

173 S.E.2d 829, 833 (1970) (emphasis added).  Based on the totality of the circumstances known to Officer Muse at the time of his arrest of Sanford—including his knowledge that Sanford was a felon convicted of a drug offense, that he was a passenger in the vehicle driven by Oliver, that during the search of that vehicle based on an alert by a drug dog, a gun was discovered in a bag containing men's clothing that appeared to fit Sanford, and that Oliver acknowledged she knew that Sanford owned a gun, but that she did not know it was in the vehicle in which she was transporting Sanford's belongings—we conclude that a reasonable officer viewing these factors had probable cause to arrest Sanford for the offense of possessing a firearm after having been convicted of a felony.

Accordingly, we conclude from the record on appeal that the trial court erred in finding Officer Muse lacked probable cause to arrest Sanford for possession of a firearm by a convicted felon and in suppressing his statements admitting that possession following his receipt of Miranda warnings.  Accordingly, we reverse the trial court's order granting the motion to suppress and remand for such further proceedings in this case as the Commonwealth may choose to pursue.

<u>Reversed and remanded.</u>