COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, Humphreys and Kelsey
Argued at Richmond, Virginia

GEORGE WILLIAM FERGUSON, JR.

MEMORANDUM OPINION[*] BY
v.      Record No. 2483-11-2                    JUDGE ROBERT P. FRANK
JANUARY 29, 2013

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Bradley B. Cavedo, Judge

Gary R. Hershner for appellant.

Victoria Johnson, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

George William Ferguson, Jr., appellant, was convicted, in a bench trial, of possession of

heroin with the intent to distribute, in violation of Code § 18.2-248. On appeal, he contends the trial

court erred in denying his motion to suppress evidence recovered as a result of an unlawful

detention. For the reasons stated, we affirm the judgment of the trial court.

BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26

Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438,

443, 358 S.E.2d 415, 418 (1987)).

So viewed, at 10:19 p.m. on September 12, 2008, Officer Shawn Gaines of the Richmond

Police Department passed an apartment complex while on foot patrol. Based on his previous

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

experience in the area, Gaines knew that these apartments were subject to trespassing violations. He also knew that narcotics users and sellers were prone to congregate there, particularly in the stairwells, which were not visible from the street. Officer Gaines had personally encountered a "handful" of narcotics and trespassing offenses at the complex and was aware that other officers in his unit had handled "numerous cases" on a regular basis involving trespassing, narcotics, or firearms activity at the apartments. The apartments, which are located in a high-crime area, have "no trespassing" signs posted, and the apartment managers have asked the police to enforce trespassing laws on the property.

The stairwells are "off set to the street" so a street-level observer can see only an individual's feet in the stairwell. Gaines observed two sets of feet in the stairwell. Officer Gaines entered the stairwell to talk to the individuals. Upon entering the stairwell, he saw two men, appellant and Anthony Waddy, sitting beside each other. Immediately upon Gaines' arrival and from a distance of only about two feet, Waddy made "a throwing motion and threw something down." However, Gaines did not see the object that left Waddy's hand. During his career as a police officer, Gaines had seen individuals throw drugs away upon seeing police officers approach more than ten or fifteen times. Because of this experience, Gaines suspected Waddy had thrown a small package of illegal drugs.

Officer Gaines told both Waddy and appellant to move back and stand up against the wall. He then called for a backup unit. At that point, Gaines had not inquired whether appellant and Waddy were residents of the apartments or why they were there. Officer Gaines explained both at the suppression hearing and at trial that he took the precaution of having both Waddy and appellant stand up against the wall because he wanted to be able to see their hands. Officer Gaines noted he was alone in a stairwell that was not fully visible from the street with two suspects and was accordingly concerned for his safety. Gaines further candidly acknowledged that when he told the

suspects to move back against the wall, they were not free to leave. Instead, Officer Gaines wanted to investigate what was going on in the stairwell, given his suspicion that the two were trespassing and his suspicion that the object Waddy threw was contraband.

When appellant and Waddy moved against the wall, Officer Gaines observed on the ground a syringe and a piece of paper containing an off-white substance, which Gaines knew from his training and experience to be a hit of cocaine. Gaines also saw a cap with liquid in it.

Officer Richard Chappell, who had arrived as part of the backup, talked to appellant. As Officer Chappell spoke to appellant, Chappell noticed appellant move his hand towards his coat pocket. Upon shining his flashlight into appellant's pocket, and without touching the pocket, Officer Chappell was able to see "what appeared to be drugs" in appellant's pocket. Chappell called Gaines over to look, and Officer Gaines shone his flashlight inside appellant's pocket. Officer Gaines, who believed the items were hits of heroin, seized them from appellant's pocket. After he seized the items and secured them in his patrol car, Officer Gaines read appellant his Miranda rights. Appellant told Officer Gaines that another person gave him the heroin and instructed him that, in exchange for selling the heroin, he could keep one hit for himself.[1] At the suppression hearing, appellant argued Gaines had no reasonable suspicion when he detained appellant by ordering him to stand up and back up to the wall. Further, appellant contended, Waddy's throwing action did not give rise to suspicion of wrongdoing by appellant.

In denying appellant's motion, the trial court pointed to the high crime area, the nature and location of the stairwell, the officer's experience with drug dealing in the stairwell, the no trespassing signs, and Waddy's throwing motion. The trial court found Gaines had reasonable suspicion to detain appellant.

---

[1] At the motion hearing, appellant indicated these statements were not subject to the motion to suppress.

Further, the trial court made factual findings that there was no pat down and that the drugs found in appellant's pocket were in plain view, visible without manipulation.

Appellant renewed his motion to suppress during his trial. The trial court denied the renewed motion for the reasons stated in its original ruling.

This appeal follows.

ANALYSIS

On appeal, appellant asserts that his detention was illegal, because the officer had no reasonable suspicion of any criminal activity by appellant.[2] It is uncontested that appellant was seized when Officer Gaines ordered appellant to stand up and back up to the wall.[3] He maintains that any suspicion of Waddy's activity does not translate to reasonable suspicion of any criminal activity on the part of appellant.

The Commonwealth contends reasonable suspicion existed for Gaines to investigate possible drug activity and to ensure his personal safety. The Commonwealth does not contend that reasonable suspicion included an investigation of trespassing. Therefore, we do not consider whether trespassing was a factor in determining reasonable suspicion.

On appeal of the denial of a motion to suppress, we view the evidence in the light most favorable to the Commonwealth. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them,'" McGee v. Commonwealth, 25 Va. App.

---

[2] At oral argument, appellant raised questions regarding the duration of appellant's detention, the legality of the pat down, and the seizure of drugs from his pocket. As these issues were neither contained in the assignment of error nor argued on brief, they are waived, and we will not consider them. See Rule 5A:20(c) and (e). See also Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 39 n.4, 542 S.E.2d 785, 789 n.4 (2001) (declining to consider an issue on appeal because it was not "expressly stated" in the questions presented (now assignments of error)).

[3] In his brief, appellant does not challenge whether an illegal pat down was conducted.

193, 198, 487 S.E.2d 259, 261 (1997) (en banc), but we review *de novo* the trial court's application of defined legal standards such as reasonable suspicion and probable cause to the particular facts of the case, see Ornelas v. United States, 517 U.S. 690, 699 (1996).

In order to justify a brief seizure or Terry[4] stop, an officer must have a "reasonable and articulable suspicion of criminal activity on the part of the defendant." Commonwealth v. Holloway, 9 Va. App. 11, 15, 384 S.E.2d 99, 101 (1989) (citing United States v. Sokolow, 490 U.S. 1, 2 (1989)). An officer who develops such suspicion may stop a person "in order to identify him, to question him briefly, or to detain him briefly while attempting to obtain additional information" to confirm or dispel his suspicions. Hayes v. Florida, 470 U.S. 811, 816 (1985) (citing United States v. Hensley, 469 U.S. 221, 229, 232, 234 (1985)). "[A]n officer need not suspect an individual of a particular crime in order to justify a Terry stop. A general suspicion of some criminal activity is enough, as long as the officer can, based on the circumstances before him at the time, articulate a reasonable basis for his suspicion." Hatcher v. Commonwealth, 14 Va. App. 487, 490, 419 S.E.2d 256, 258 (1992).

On appeal, when we analyze whether a police officer had the requisite reasonable suspicion to conduct an investigatory stop, we must consider the totality of the circumstances and regard the facts "objectively through the eyes of a reasonable police officer with the knowledge, training, and experience of the investigating officer." Murphy v. Commonwealth, 9 Va. App. 139, 144, 384 S.E.2d 125, 128 (1989). "[I]n determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Terry v. Ohio, 392 U.S. 1, 27 (1968).

---

[4] Terry v. Ohio, 392 U.S. 1 (1968), governs police conduct if the officers stop short of something called a "technical arrest" or a "full-blown search." Id. at 19.

Even if there might be an innocent explanation, which appellant does not assert here, that possibility does not necessarily eliminate a reasonable suspicion that the suspect might be participating in criminal activity. Raab v. Commonwealth, 50 Va. App. 577, 581-82, 652 S.E.2d 144, 146 (2007) (quoting 4 Wayne R. LaFave, Search and Seizure § 9.5(b), at 482 (4th ed. 2004)). "[T]he principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal – to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.'" Id. at 582, 652 S.E.2d at 146.

Appellant cites an unpublished case, Evans v. Commonwealth, No. 0577-94-2, 1995 Va. App. LEXIS 544 (Va. Ct. App. June 27, 1995), to support his contention that Waddy's throwing motion did not provide reasonable suspicion to believe appellant was engaging in criminal activity. Initially, we note that while unpublished opinions are permitted as informative, they are not binding authority. See Rule 5A:1(f). Further, Evans is inapposite to this case. In Evans, we held that the officer observing a hand-to-hand exchange, without seeing what was exchanged, did not provide *probable cause* to arrest Evans. Unlike Evans, the issue here is the lower standard of reasonable suspicion, not probable cause. In fact, in Evans, we concluded "[a] complete review of the record shows that 'at most, the facts raised a suspicion that criminal activity was foot; the facts did not provide [the officer] with probable cause to believe that the appellant had or was committing a crime.'" Id. at *4-*5.

Appellant's reliance on McCain v. Commonwealth, 275 Va. 546, 659 S.E.2d 512 (2008), is equally unavailing. In that case, McCain and a companion drove up to a particular house, which was located in a "high drug area," walked up to the house and, within a minute, returned to their vehicle. The officer who observed this activity was familiar with the house because he had been involved in a drug transaction at that house "months earlier." The Supreme Court of

Virginia found these facts were insufficient to provide reasonable suspicion to believe McCain was engaged in criminal activity. The officer did not observe any suspected drug activity.[5]

In contrast, here, Officer Gaines observed two individuals sitting in a stairwell, in an apartment complex known as a high crime area. He had personally encountered drug offenses there and knew that other officers had handled numerous cases involving drugs, weapons, and trespassing. He also knew from experience, because the stairwells were not visible from the street, drug transactions occurred there.

Immediately upon Gaines' arrival at the stairwell, appellant's companion, Waddy, threw down an object, but at that moment, Gaines was unable to ascertain what that object was. Gaines, in his experience as a police officer, had witnessed individuals throw down drugs upon the approach of police officers. Thus, Gaines suspected Waddy had thrown drugs. It was reasonable for Officer Gaines to suspect he had interrupted a drug transaction. Whether an officer has a reasonable suspicion to justify such a detention is "based on an assessment of the totality of the circumstances." Harris v. Commonwealth, 276 Va. 689, 695, 668 S.E.2d 141, 145 (2008). That assessment "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

The mere fact that Waddy, rather than appellant, threw down the suspected drugs is not dispositive of this analysis. In Bandy v. Commonwealth, 52 Va. App. 510, 664 S.E.2d 519

---

[5] We note that the Supreme Court of Virginia, while ruling there was no reasonable suspicion, nevertheless found the officer had probable cause to make a traffic stop. "Thus, although there was no reasonable suspicion of criminal activity on the part of McCain, stopping the vehicle in which McCain was traveling was constitutionally permissible because of the traffic and equipment violations that [the police officer] observed." McCain, 275 Va. at 553, 659 S.E.2d at 516.

(2008), in finding the police had reasonable suspicion to detain Bandy, we considered Bandy's "association" with his companion Mitchell who made a throwing motion toward a bush, along with a number of other factors. Id. at 518, 664 S.E.2d at 523.

In this case, based on the totality of the circumstances, which include Waddy's throwing motion, the high crime nature of the apartment complex, the location of the stairwell, and Officer Gaines' personal experience with that location, Gaines had reasonable suspicion to believe criminal activity was afoot and was duty bound to further investigate.

Finding no error, we affirm the judgment of the trial court.[6]

## CONCLUSION

For the foregoing reasons, we agree with the trial court's denial of appellant's motion to suppress. As such, we affirm the judgment of the trial court.

Affirmed.

---

[6] No evidence was seized, and no incriminating statements were made, prior to the officer's visual examination of the abandoned items and his conclusion they were likely drug paraphernalia and cocaine. At oral argument on appeal, appellant's counsel withdrew any claim that the allegedly unlawful detention preceding the officer's identification of the abandoned items warranted the suppression of evidence at trial. See Oral Argument Audio at 7:38 to 8:59. Thus, even if the initial detention was unlawful, the officer's discovery of the abandoned items constituted an intervening event fully justifying the officer's continued detention of appellant.