COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges O'Brien, AtLee and Athey
Argued at Lexington, Virginia


ZAKARIA ISMAIL KRONEMER

v.      Record No. 1475-18-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE CLIFFORD L. ATHEY, JR.
NOVEMBER 26, 2019


FROM THE CIRCUIT COURT OF ROANOKE COUNTY
James R. Swanson, Judge

Cerid E. Lugar (Lugar Law, on brief), for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Zakaria Ismail Kronemer ("Kronemer") challenges his conviction for providing false

identifying information to Roanoke County police officers investigating a trespassing complaint

involving protestors opposed to the Mountain Valley Pipeline.  On appeal, Kronemer contends

that the Circuit Court of Roanoke County ("trial court") erred in finding him "lawfully detained"

pursuant to Code § 19.2-82.1 because the encounter with the officers was consensual.  For the

following reasons, we find no error in the trial court's application of the statute to the facts of

this case and affirm Kronemer's conviction.

I. BACKGROUND

On April 9, 2018, the Roanoke County Police Department dispatched Commander

Poindexter ("Poindexter") and Officer Dooley ("Dooley") to respond to a call regarding

protestors trespassing on property owned by the company constructing the Mountain Valley

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Pipeline ("Pipeline property"). In response, Poindexter and Dooley drove to the area of 8487 Honeysuckle Road in Roanoke County and spoke with a security guard and employees working on Pipeline property. The security guard and employees directed the officers to a group of protestors trespassing on Pipeline property. The officers then began their investigation of the alleged trespass.

Both officers were in full uniform with their badges displayed as they approached Kronemer and two female companions who were standing on Pipeline property. Dooley advised Kronemer and his companions that they were not permitted to be on Pipeline property. In fact, Dooley testified at trial that the officers "advised [the group] that they were "committing a crime of trespassing," and "needed them to identify themselves." The officers then directed Kronemer and the other trespassers to come forward and identify themselves.

When the group ignored the officers' directions, Dooley and Poindexter approached them to secure their identifying information. At this point, Poindexter specifically requested that Kronemer "come over and speak with [him]." Kronemer refused a second time and began to walk away. Poindexter then proceeded to follow behind Kronemer, explaining that he and Dooley were investigating a trespassing complaint. Kronemer finally stopped, turned around, and began to answer Poindexter's questions.

In response to Poindexter's instruction to identify himself, Kronemer claimed that his name was "Richard Kron." He then claimed that he was born on "June 25, 1998" and that he resided at "15234 Terra Boulevard, Roanoke, Virginia." After having ascertained that the identifying information provided by Kronemer was false, Poindexter charged Kronemer with violating Code § 19.2-82.1.

At trial, Kronemer contended that the encounter was consensual and argued that he had not been "detained" as required by the statute when he provided the identifying information to

Poindexter. The trial court rejected his argument and found that the show of authority by the officers was sufficient to establish that Kronemer was detained when he provided false identifying information. The trial court found that when Kronemer stopped and responded to Poindexter's inquiries, Kronemer had submitted to a show of authority that "in some way restrained [his] liberty."

Because Kronemer was detained when he gave the false identifying information, the trial court found him guilty of violating Code § 19.2-82.1 and sentenced him to seventy-five days in jail. The trial court suspended that jail term conditioned upon his good behavior, the completion of twelve months of unsupervised probation, and the payment of a $150 fine. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

This appeal turns on the meaning of the undefined statutory term "detained" in Code § 19.2-82.1 and thus presents a question of statutory construction, which we review *de novo*. Timbers v. Commonwealth, 28 Va. App. 187, 193 (1998). Although we interpret the statute *de novo*, we must "consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party below." Walker v. Commonwealth, 272 Va. 511, 513 (2006). Reviewing the sufficiency of the evidence to support a criminal conviction requires that "we 'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257 (2003) (*en banc*) (quoting Davis v. Commonwealth, 39 Va. App. 96, 99 (2002)). On review, we are "bound by the trial court's findings of historical fact" unless they are "plainly wrong," and we must "give due weight to the

inferences drawn from those facts by resident judges and local law enforcement officers."

McGee v. Commonwealth, 25 Va. App. 193, 198 (1997) (*en banc*).

B.  Sufficiency of the Evidence

1.  The Meaning of "Detained" in Code § 19.2-82.1

Code § 19.2-82.1 states that:  "Any person who falsely identifies himself to a law-enforcement officer with the intent to deceive the law-enforcement officer as to his real identity after having been lawfully detained and after being requested to identify himself by a law-enforcement officer, is guilty of a Class 1 misdemeanor."

"When, as here, a statute contains no express definition of a term, the general rule of statutory construction is to infer the legislature's intent from the plain meaning of the language used."  Jones v. Von Moll, 295 Va. 497, 504 (2018) (quoting Hubbard v. Henrico Ltd. Partnership, 255 Va. 335, 340 (1998)).  "We must presume that the General Assembly chose, with care, the words that appear in a statute, and must apply the statute in a manner faithful to that choice."  Jones v. Commonwealth, 296 Va. 412, 415 (2018) (quoting Johnson v. Commonwealth, 292 Va. 738, 742 (2016)).

The term "detained" in Code § 19.2-82.1 is well-defined in Fourth Amendment jurisprudence, and the plain meaning of the language in the statute suggests no legislative intent to assign it a different meaning.  See, e.g., McGee, 25 Va. App. at 202 (following the landmark case of Terry v. Ohio, 392 U.S. 1 (1968)).  As we recognized in McGee, an individual has been "detained" when he has been "either physically restrained or has submitted to a show of authority."  Id. at 199; see also Terry, 392 U.S. at 19 n.16 ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred.").  We further acknowledged that police may "detain" an individual to investigate without violating the Fourth Amendment when there is a "reasonable,

articulable suspicion that [he] is engaging in, or is about to engage in criminal activity." McGee, 25 Va. App. at 202 (citing Terry, 392 U.S. at 27).

The statutory language closely tracks the language we have used in cases involving investigative detentions—colloquially known as Terry stops. See, e.g., id. (citing Terry, 392 U.S. at 27, for the proposition that an officer may detain an individual briefly to investigate without violating the Fourth Amendment when there is a "reasonable, articulable suspicion that [he] is engaging in, or is about to engage in criminal activity").

We also observe that this interpretation of "detained" comports with Fourth Amendment requirements. See Brown v. Texas, 443 U.S. 47, 50 (1979) (holding there must be a reasonable suspicion of criminal activity for officers to detain an individual to produce identifying information under a state statute).

2. The Evidence Required to Sustain a Conviction Under Code § 19.2-82.1

Kronemer contends that the encounter with the officers was consensual and claims that "the evidence adduced at trial confirms that [he] was never detained at all as is expressly required by the Virginia Code section charged." Because we find that Kronemer was detained by the officers when he gave the false identifying information, his argument fails. In this case, Kronemer only challenged the trial court's finding that police had "detained" him when he provided false identification. He does not argue that he was unlawfully detained, nor does he contend that police engaged in any misconduct; therefore, our focus is solely on whether the police had "detained" Kronemer when he provided the false identifying information.

Because the term "detained" in Code § 19.2-82.1 has the same meaning that "detained" has in Fourth Amendment jurisprudence, an individual is "detained" by a law enforcement officer under Code § 19.2-82.1 when he or she has been "either physically restrained or has submitted to a show of authority" under a brief investigative detention based upon an officer's

- 5 -

reasonable suspicion that crime is afoot. <u>McGee</u>, 25 Va. App. at 199. This standard has been satisfied when "a reasonable person would have believed that he or she was not free to leave" based on the totality of the circumstances. <u>See id.</u> at 199-200 (determining detention requires an objective view of the circumstances "through the eyes of a reasonable police officer with the knowledge, training and experience of the investigating officer").

We have characterized communication from an officer to an individual that the officer "received information that the individual is engaging in criminal activity" as "significant" in determining whether a reasonable person would feel free to leave. <u>Id.</u> at 200. Conveying such a message suggests to the individual that his "compliance with [the officer's] request is required," which objectively weighs against a belief that one is free to leave. <u>Id.</u> (quoting <u>Florida v. Bostick</u>, 501 U.S. 429, 435 (1991)). When an officer conveys the message that compliance is required, *how* the message was conveyed becomes paramount in resolving whether a reasonable person would feel free to leave. <u>See id.</u> at 200-01 (explaining that a seizure turns on the "manner in which the police identif[y] the individual as a suspect"). The trial court hears the tone in the testimony of each witness and similarly evaluates demeanor and credibility firsthand. <u>Id.</u> at 201; <u>see also</u> <u>Sandoval v. Commonwealth</u>, 20 Va. App. 133, 138 (1995) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the [trial court] who has the opportunity to see and hear that evidence as it is presented.").

The significance of the manner of communication makes the trial court's determinations even more important when we must defer to these determinations on appeal. <u>See McGee</u>, 25 Va. App. at 200-01 (holding that a seizure occurred, we gave great weight on review to the fact that officers told appellant they suspected him of dealing drugs; we also gave great weight to the trial court's finding that a seizure occurred because the trial court could evaluate the credibility

and demeanor of each officer as a witness, including the tone of voice each officer used in speaking to appellant).

In addition to the presence of "language or tone of voice indicating that compliance with the officer's request might be compelled," the United States Supreme Court has also found the presence of several officers to be another factor indicative of a seizure. See id. at 200 n.2 (following United States v. Mendenhall, 446 U.S. 544, 553-54 (1980), a landmark decision examining when a person is seized or detained under the Fourth Amendment).

Viewing the evidence in the light most favorable to the Commonwealth, Kronemer submitted to a show of authority pursuant to a brief investigative detention based on Poindexter's reasonable and articulable suspicion that Kronemer was trespassing. See Code § 18.2-119. Once the employees of the Mountain Valley Pipeline called police, asked for assistance, and identified Kronemer and others as trespassers, Poindexter and Dooley had a reasonable and articulable suspicion that crime was afoot on Pipeline property. See Raab v. Commonwealth, 50 Va. App. 577, 583 (2007) (en banc) (holding that an officer had a reasonable suspicion that an individual was trespassing when he was parked in a restaurant parking lot after hours). Thus, we agree with the trial court's finding that Kronemer submitted to the show of authority when he stopped, turned around, and responded to Poindexter's instruction to stop and identify himself. Indeed, through words and actions, the officers conveyed the message to Kronemer that he was being detained during this investigation and that his compliance was required.

Here, the officers arrived on scene in a marked patrol vehicle and approached Kronemer wearing their uniforms and displaying their badges of authority. As the officers approached, Dooley announced that Kronemer was not permitted to be on Pipeline property. After accusing Kronemer and his female companions of trespassing, officers repeatedly asked for Kronemer's identifying information and asked him to stop. When Kronemer initially failed to comply with

Dooley's instructions, Poindexter pursued him, repeating commands that he stop and identify himself. Explaining to Kronemer why he needed to stop and identify himself, Poindexter expressly told Kronemer that the officers were investigating a trespassing complaint and that he was a suspect. Under these circumstances, a reasonable person would have believed that he had been detained and could not refuse to comply with the instructions.

Accordingly, the trial court properly found that when Kronemer stopped, turned around, and spoke to Poindexter, he had submitted to the show of authority and had been detained under Code § 19.2-82.1. The trial court observed Poindexter's testimony regarding how he instructed Kronemer to stop and identify himself, along with evidence of Kronemer's reaction; thus, the trial court was in the best position to determine whether officers used language or tone of voice suggesting that compliance was required. The trial court's finding that police had detained Kronemer was, therefore, not plainly wrong or without evidence to support it. We agree with the trial court's decision and find no error in its application of Code § 19.2-82.1 here.

Because the trial court did not err in finding that police had "detained" appellant as contemplated in Code § 19.2-82.1, we find the evidence sufficient to sustain appellant's conviction.

III. CONCLUSION

For these reasons, we affirm the decision of the trial court.

Affirmed.