COURT OF APPEALS OF VIRGINIA

Present:    Judges Frank, Kelsey and Senior Judge Bumgardner
Argued at Salem, Virginia

AUBRIAN GLENN SHIFFLETT
                                                                    OPINION BY
v.        Record No. 1951-10-3                          JUDGE D. ARTHUR KELSEY
                                                                    OCTOBER 11, 2011
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF NELSON COUNTY
J. Michael Gamble, Judge

Bonnie J. Lepold (Snook & Haughey, P.C., on brief), for
appellant.

Jennifer C. Williamson, Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief), for
appellee.

In the trial court, Aubrian Glenn Shifflett entered a conditional guilty plea to driving

while intoxicated and operating an unregistered, uninspected, and uninsured vehicle. On appeal,

Shifflett contends the trial court should have suppressed the evidence of his guilt because the

police officer unlawfully stopped his "farm use" vehicle. We disagree and affirm.

I.

On appeal of a denial of a suppression motion, we view the evidence "in the light most

favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Glenn v.

Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (en banc) (citation omitted),

aff'd, 275 Va. 123, 654 S.E.2d 910 (2008). This standard requires us to "give due weight to

inferences drawn from those facts by resident judges and local law enforcement officers."

Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (citation omitted).

On February 18, 2010, a Virginia State Police Trooper, driving southbound on Rockfish

Valley Highway, Route 151, in Nelson County, just south of River Road, Route 6, noticed a

pickup truck traveling northbound. The pickup truck displayed a store-bought farm use tag, rather than an official license plate issued by the Virginia Department of Motor Vehicles (DMV) for registered farm use vehicles. See Code § 46.2-698. It was nearly 10:00 p.m. and very dark. Three people occupied the cab of the pickup truck. The trooper saw something in the bed of the pickup truck but could not determine what it was. Snow from a recent snowstorm covered the ground. "It was late at night," the trooper testified, "[a]nd in the wintertime you don't see many farm use vehicles on the road." App. at 18.

The trooper stopped the pickup truck to determine if it was, in fact, an unregistered vehicle being used exclusively for farm use. The trooper discovered that the driver, Shifflett, smelled of alcohol, had glassy, bloodshot eyes, and spoke with slurred speech. The trooper also saw two empty cases of beer, several empty single beer cans, and a bottle of whiskey. He later determined the pickup truck was unregistered, uninspected, and uninsured. From his investigation, the trooper also concluded his initial suspicion was correct: The pickup truck was not being used for agricultural purposes that night.

In the trial court, Shifflett moved to suppress the evidence of his guilt, claiming the trooper did not have a reasonable suspicion to stop the pickup truck. The trial court disagreed and held the trooper had reasonable suspicion "under the circumstances of this case." App. at 26. With the trial court's approval, Shifflett entered a conditional guilty plea to driving while intoxicated and operating an unregistered, uninspected, and uninsured vehicle. See Code §§ 18.2-266, 46.2-646, 46.2-1157, 46.2-707.

II.

On appeal, Shifflett argues the trial court erred by denying his suppression motion. The trooper's stop of his pickup truck, Shifflett contends, violated the Fourth Amendment. The trial court disagreed, as do we.

A.  REASONABLE SUSPICION STANDARD

While an arrest requires probable cause, a mere investigatory stop requires only a "reasonable suspicion" that unlawful activity "may be afoot."  United States v. Arvizu, 534 U.S. 266, 273 (2002) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989), and Terry v. Ohio, 392 U.S. 1, 30 (1968)).[1]  This degree of certitude required is "considerably *less* than proof of wrongdoing by a preponderance of the evidence, and obviously *less* demanding than that for probable cause."  Perry v. Commonwealth, 280 Va. 572, 581, 701 S.E.2d 431, 436 (2010) (emphasis added) (quoting Sokolow, 490 U.S. at 7).  The standard "is not an exacting one," Braun v. Maynard, 2011 U.S. App. LEXIS 14940, at *10 (4th Cir. July 21, 2011), and requires only "a moderate chance of finding evidence of wrongdoing," Safford Unified Sch. Dist. No. 1 v. Redding, 129 S. Ct. 2633, 2639 (2009).[2]

It follows that the mere "possibility of an innocent explanation" does not necessarily exclude a reasonable suspicion that the suspect might be violating the law.  Morris v. City of Va. Beach, 58 Va. App. 173, 183, 707 S.E.2d 479, 483 (2011) (quoting Raab v. Commonwealth, 50 Va. App. 577, 581-82, 652 S.E.2d 144, 147 (2007) (*en banc*) (quoting in turn 4 Wayne R.

---

[1] See also Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464-65 (2003) (restating standard as "may be involved in criminal activity"); Morris v. City of Va. Beach, 58 Va. App. 173, 183, 707 S.E.2d 479, 483 (2011); Thomas v. Commonwealth, 57 Va. App. 267, 275 n.5, 701 S.E.2d 87, 91 n.5 (2010); Raab v. Commonwealth, 50 Va. App. 577, 581-82, 652 S.E.2d 144, 146-47 (2007) (*en banc*).

[2] Shifflett's appellate brief relies in part on the trooper's subjective reasoning for the stop. See Appellant's Br. at 7-8.  Faced with a suppression motion, however, a court should not limit itself "to what the stopping officer says or to evidence of his subjective rationale" for his actions. Raab, 50 Va. App. at 583 n.2, 652 S.E.2d at 148 n.2 (citation omitted).  If the detention was objectively reasonable, "the Fourth Amendment authorizes the action, *whatever* the subjective intent" motivating the officer.  Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011) (citation omitted) (emphasis in original).  Examining the subjective intent of the officer "is fundamentally inconsistent with our Fourth Amendment jurisprudence," Kentucky v. King, 131 S. Ct. 1849, 1859 (2011), because "the Fourth Amendment regulates conduct rather than thoughts," al-Kidd, 131 S. Ct. at 2080 (noting narrow exceptions).

LaFave, Search and Seizure § 9.5(b), at 482 (4th ed. 2004))). And, understandably so, for "the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal — to enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges." Morris, 58 Va. App. at 183, 707 S.E.2d at 483 (citation and internal quotation marks omitted); Raab, 50 Va. App. at 582, 652 S.E.2d at 147.

To be sure, Terry itself involved a police officer observing Terry and his companions "repeatedly walk back and forth, look into a store window, and confer with one another." Arvizu, 534 U.S. at 274. "Although each of the series of acts was 'perhaps innocent in itself,'" id. (quoting Terry, 392 U.S. at 22), collectively they were suspicious enough to give a police officer legitimate grounds to stop Terry and his companions for purposes of investigating the situation further. In other words, even though the suspicious individuals walking up and down the sidewalk "could simply have been innocuous, albeit overly energetic, window shoppers," that hypothesis of innocence "did not invalidate the Terry stop." Raab, 50 Va. App. at 583, 652 S.E.2d at 148.

## B. EXEMPTION FOR FARM USE VEHICLES

Virginia's statutory "licensing, registration and vehicle inspection requirements" protect the public from potentially "unsafe" drivers and vehicles. Vasaio v. Va. Dep't of Motor Vehicles, 42 Va. App. 190, 202, 590 S.E.2d 596, 602 (2004) (citation omitted). A farm use vehicle registered with the DMV receives official license plates called F-tags, identifying the vehicle as a farm use vehicle. See Code § 46.2-698. Though it must ordinarily be "used exclusively for farm use," id., a *registered* farm use vehicle may also be used for a limited number of "nonfarm use[s]," such as "attending church or school, securing medical supplies, or securing other household or family necessities," Code § 46.2-698(B)(2), and "responding to

- 4 -

emergency calls" when the farmer belongs to a volunteer rescue squad or firehouse, Code § 46.2-698(H).

An *unregistered* farm use vehicle must comply with stricter limitations. "Because of the limited number and use of such vehicles upon the highway," Duke v. Cnty. of Pulaski, 219 Va. 428, 436, 247 S.E.2d 824, 829 (1978), the general statutory exemption applies only when the vehicle is being "used *exclusively* for agricultural or horticultural purposes," Code § 46.2-665(A) (emphasis added), and, even then, only when its actual operation fits within a limited list of permissible farm use tasks, Code § 46.2-665(B).

Additional statutes provide narrowly crafted exemptions for farm use vehicles involved in particular farm-related activities. See, e.g., Code § 46.2-664 (vehicles used for "spraying" crops and trees); Code § 46.2-666 (vehicles used "on a seasonal basis in transporting farm produce and livestock"); Code § 46.2-668 (vehicles registered in other states used in Virginia "harvesting" operations); Code § 46.2-670 (farm vehicles traveling to and from "sawmills"); Code § 46.2-672 (vehicles used to "transport unginned cotton, peanuts, or fertilizer"). These specific-use statutes, however, involve exclusively agricultural or horticultural uses. Code § 46.2-673 permits additional uses — making a "return trip" from a marketplace and transporting food and other supplies "to a farm"— but limits those return-trip uses to a "farm vehicle" already "exempted from registration" under the general and specific-use exemption statutes.

In this case, the factual circumstances justified a reasonable suspicion that Shifflett — at the time of the stop — might not have been using his unregistered pickup truck consistent with the statutory exemptions governing farm use vehicles. Several circumstances support this conclusion: the pickup truck displayed a store-bought farm use tag, purporting itself to be an unregistered farm use vehicle; three people were in the pickup truck's cab; and the pickup truck traveled north on Route 151 in Nelson County at nearly 10:00 p.m. in the dead of winter after a

snowstorm. These facts were further amplified by the trooper's observation that "in the wintertime you don't see many farm use vehicles on the road." App. at 18.

To those outside the local community, these circumstances may mean very little. Under settled law, however, a trial judge applying the Fourth Amendment "views the facts of a particular case in light of the distinctive features and events of the community" and these "background facts, though rarely the subject of explicit findings, inform the judge's assessment of the historical facts." Ornelas v. United States, 517 U.S. 690, 699-700 (1996). Given the trial judge's unique capacity to contextualize the facts, appellate courts give "due weight" to the inferences drawn "by resident judges," Jones v. Commonwealth, 279 Va. 521, 528, 690 S.E.2d 95, 99 (2010) (citation omitted), applying Fourth Amendment principles to fact patterns unique to their local communities.[3]

We acknowledge Shifflett's complaint that the trial court's analysis, which we adopt as our own, relies heavily on generalities. But, truth be told, it is supposed to be this way. The reasonable suspicion standard itself is a "somewhat abstract" and "elusive concept" that cannot be reduced to a "neat set of legal rules." Arvizu, 534 U.S. at 274 (additional citation omitted) (quoting Ornelas, 517 U.S. at 695-96, and Illinois v. Gates, 462 U.S. 213, 232 (1983)). We thus find it unnecessary to develop a grid of all possible lawful uses of an unregistered farm use vehicle in order to determine whether the facts convincingly negate each hypothesized use.

Each permissible use of an unregistered vehicle presupposes the vehicle is being "used exclusively for agricultural or horticultural purposes," Code § 46.2-665(A), or for one of the intrinsically farm-related activities covered by the specific-use exemption statutes. Driving from one farm to another, for example, may be a permissible use — but only when the drive is

---

[3] See also Malbrough, 275 Va. at 169, 655 S.E.2d at 3; Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000); Morris, 58 Va. App. at 176, 707 S.E.2d at 480.

exclusively for agricultural or horticultural purposes. See Code § 46.2-665(B)(2) (authorizing farm use vehicles to operate "along a highway for a distance of no more than thirty miles from one part of the owner's land to another, irrespective of whether the tracts adjoin").[4] Picking up a plow from the nearby farm would certainly qualify, while picking up a case of beer to drink on the ride home would not.

In sum, we eschew any "divide-and-conquer analysis" that ignores the "totality of the circumstances." Arvizu, 534 U.S. at 274. Nor do we ask whether these circumstances, under a preponderance of the evidence standard, made it more likely than not that Shifflett had exceeded the permissible uses of his unregistered pickup truck on the night of the stop. We do not even ask whether probable cause existed to suspect as much. Instead, we ask only whether the objective facts created a reasonable suspicion that Shifflett — at the time of the stop —might not have been using his unregistered pickup truck consistent with the statutory exemptions governing farm use vehicles. Accord Morris, 58 Va. App. at 176, 707 S.E.2d at 480; Reel v. Commonwealth, 31 Va. App. 262, 270, 522 S.E.2d 881, 885 (2000).


III.

Because the trial court properly denied Shifflett's motion to suppress, we affirm his convictions entered pursuant to his conditional guilty plea.

Affirmed.

---

[4] After the stop in this case, an amendment to Code § 46.2-665(B) took effect, limiting the general registration exemption to farm use vehicles "having a gross vehicle weight rating greater than 7,500 pounds" in addition to trailers and semitrailers. See 2010 Va. Acts c. 293 (effective July 1, 2010). While not relevant to this case, the estimated weight of the unregistered vehicle is now a factor that the stopping officer may consider when determining whether an unregistered farm use vehicle complies with the general exemption statute.