COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Beales and Decker
Argued by teleconference

WILLIE BILLUPS

MEMORANDUM OPINION[*] BY
v.      Record No. 1037-14-1      JUDGE MARLA GRAFF DECKER
MAY 5, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Junius P. Fulton, III, Judge

J. Barry McCracken, Assistant Public Defender (Office of the Public
Defender, on brief), for appellant.

Susan Mozley Harris, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Willie Billups was convicted of possession of cocaine in violation of Code § 18.2-250.

He contends that the trial court erred in denying his motion to suppress evidence because law

enforcement did not have reasonable articulable suspicion of either criminal conduct or a traffic

infraction to justify a stop of the vehicle in which he was a passenger.  For the following reasons,

we affirm the conviction.

I.  BACKGROUND

"When reviewing a denial of a motion to suppress evidence, an appellate court considers

the evidence in the light most favorable to the Commonwealth and will accord the

Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence."

Branham v. Commonwealth, 283 Va. 273, 279, 720 S.E.2d 74, 77 (2012).  Applying these

principles, the evidence established the following.

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On the morning of June 5, 2013, Investigators L.C. Heinzen and Keith Ryan ("the officers") of the Norfolk Police Department were on patrol in an unmarked police car in the Lafayette neighborhood of Norfolk. The officers were on their way to investigate suspected drug activity at a house in that neighborhood. Heinzen noticed a parked car on Grandy Avenue, with an unknown man ("first man") standing next to it. Heinzen saw this individual "meeting" with another unknown man ("second man") on the corner of Grandy Avenue and Tait Terrace. The officers parked in a lot across the street and continued to watch the two individuals. Heinzen used her binoculars to further observe the two men. She saw a hand-to-hand transaction between the individuals. Heinzen testified that she saw the second man hand the first man "something . . . cupped in his left hand." The officer was unable to specifically identify the object exchanged between the men. After the encounter, the first man went to the driver's seat of the car parked on Grandy Avenue, and "look[ed] towards his lap once he got in the vehicle." The interaction between the two men was brief, lasting less than a minute.

While Heinzen was watching the interaction through her binoculars, the appellant came into her line of sight. He arrived in a Honda and then walked over to the second man while the first man was walking away. Heinzen saw the appellant "meet up" with the second man, who had remained at the corner. According to Ryan, they appeared to have a brief conservation. The second man handed the appellant something "cupped in his right hand." This interaction lasted approximately thirty seconds. Ryan did not see the actual exchange that Heinzen saw through her binoculars, but he did see the appellant and the other individual standing very close to each other with their hands down low. He agreed that they could have been shaking hands.

 After this encounter, the appellant went back to the Honda and got into the front passenger seat. The Honda proceeded to drive away, and shortly thereafter, Heinzen and Ryan stopped the car. Ryan asked for consent to search the car. The driver and the appellant

consented to a search. While Ryan was conducting the search, he was informed over the police radio that the appellant had an outstanding warrant. Ryan arrested the appellant based on the warrant. The officer then returned to his search of the vehicle. He discovered two "folded-up lottery tickets" with "an off-white substance" in both tickets in the pocket of the front passenger door. The appellant, who was seated in the back of a police car, motioned to Ryan to come over to him. He said to the officer, "[The] stuff that you found is just my cut." The substance was later determined to be cocaine.

At the suppression hearing, Heinzen testified that she had been employed by the Norfolk Police Department for eight years. Ryan testified that he had been with the department for thirteen years. They both had been working with the vice and narcotics team for approximately six years. Heinzen had witnessed approximately 100 to 200 hand-to-hand transactions over a period of six to eight years. Of those transactions, about nine out of ten either were determined to be drug transactions or led to drug arrests when further investigated. Ryan had observed, on the "low end," approximately twenty-five hand-to-hand transactions. After investigating these incidents further, he found evidence of drug activity "a majority of the time." According to the officers, the incident involving the appellant was very similar to the hand-to-hand transactions in other drug transactions they had encountered. Heinzen noted the similarity between the encounter involving the appellant and other hand-to-hand transactions, as both were "two people meeting for seconds and then parting ways."

Heinzen described the southern part of the Lafayette neighborhood as "an open-area drug market," where one "can just go to that area and request to purchase narcotics." She also agreed with the characterization of the neighborhood as a high-crime area. Ryan testified that the area was "known for drugs." The officers had both personally investigated drug activity in that area prior to this incident. Heinzen had conducted approximately ten drug arrests in the area. Ryan

- 3 -

had personally only handled one investigation in south Lafayette, but had "been involved in execution of search warrants . . . , arrests and several other things in that area." Further, he had participated in "several operations and search warrants within probably half-a-mile of that area."

Prior to trial, the appellant filed a motion to suppress the evidence. At the conclusion of the suppression hearing, the judge denied the motion. He found that this incident involved a high-crime, drug activity area and two hand-to-hand transactions. The judge concluded that these "two factors alone [were] sufficient, more than sufficient to indicate that [the officers] had articulable bases to believe that what they observed was a narcotics transaction." At the conclusion of the appellant's trial, the court found him guilty of possession of cocaine and sentenced him to three years in prison, with one year four months suspended.

## II. ANALYSIS

The appellant argues that the trial court erred in denying his motion to suppress the evidence. Specifically, he contends that he was unlawfully seized because law enforcement officers did not have a reasonable articulable suspicion that he was engaged in criminal activity or had committed a traffic infraction.[1]

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon [the defendant] to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (*en banc*) (alteration in original) (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)). "'Ultimate questions of reasonable suspicion and probable cause to make a warrantless search' involve questions of both law and fact and are reviewed *de novo* on appeal." Id. at 197-98, 487 S.E.2d at 261 (quoting

---

[1] There is no evidence in the record indicating that the car in which the appellant was a passenger committed a traffic infraction. Therefore, the only question we consider on appeal is whether the officers had reasonable articulable suspicion of criminal activity at the time they stopped the vehicle.

Ornelas v. United States, 517 U.S. 690, 691 (1996)). Similarly, "whether a defendant is seized in violation of the Fourth Amendment is a question that is reviewed *de novo* on appeal." Davis v. Commonwealth, 37 Va. App. 421, 429, 559 S.E.2d 374, 378 (2002). In conducting this review, the Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. By stopping the vehicle in which the appellant was a passenger, the officers effected a seizure of the appellant under the Fourth Amendment. See Delaware v. Prouse, 440 U.S. 648, 653 (1979); Jackson v. Commonwealth, 267 Va. 666, 672, 594 S.E.2d 595, 598 (2004). However, the Fourth Amendment prohibits only unreasonable searches and seizures. See, e.g., Buhrman v. Commonwealth, 275 Va. 501, 505, 659 S.E.2d 325, 327 (2008); Roberts v. Commonwealth, 55 Va. App. 146, 152, 684 S.E.2d 824, 827 (2009). Thus, the question before this Court is whether the stop and attendant seizure was reasonable under the facts and circumstances of the case.

"In order to justify an investigatory stop of a vehicle, the officer must have some reasonable, articulable suspicion that the vehicle or its occupants are involved in, or have recently been involved in, some form of criminal activity." Logan v. Commonwealth, 19 Va. App. 437, 441, 452 S.E.2d 364, 367 (1994) (*en banc*). The purpose of an investigatory stop is "to permit an officer with reasonable suspicion of criminal activity to quickly confirm or dispel that suspicion." Davis v. Commonwealth, 35 Va. App. 533, 539, 546 S.E.2d 252, 255 (2001). "'Actual proof that criminal activity is afoot is not necessary.'" Shiflett v.

- 5 -

Commonwealth, 47 Va. App. 141, 146, 622 S.E.2d 758, 760 (2005) (quoting Harmon v. Commonwealth, 15 Va. App. 440, 444, 425 S.E.2d 77, 79 (1992)). "A reasonable suspicion is more than an 'unparticularized suspicion or "hunch."'" Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923 (2000) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). "However, it is something less than probable cause." Jackson, 267 Va. at 673, 594 S.E.2d at 598.

When determining what constitutes a reasonable suspicion on the part of the officer, the law is well-settled. "Reasonableness is judged from the perspective of a reasonable officer on the scene allowing for the need of split-second decisions and without regard to the officer's intent or motivation." Scott v. Commonwealth, 20 Va. App. 725, 727, 460 S.E.2d 610, 612 (1995). We "must consider the totality of the circumstances in determining whether a police officer had a particularized and objective basis for suspecting that a person stopped may be involved in criminal activity." Bass, 259 Va. at 475, 525 S.E.2d at 924. Each case is decided on its own particular facts and circumstances. Ornelas, 517 U.S. at 696.

Based upon the facts of this case, and in light of the applicable legal standards, we find that the officers acted lawfully when they stopped the vehicle. Consequently, they did not violate the appellant's Fourth Amendment rights.

Here, several circumstances observed by the officers and articulated at the suppression hearing provided reasonable suspicion that the appellant had just engaged in drug activity.

The officers observed two hand-to-hand transactions in a short period of time. The initial transaction occurred between two men, during which the man on the street corner handed something "cupped" in his hand to the man who arrived in a car. This individual then quickly returned to his vehicle, looking down at his lap once inside. While this interaction was taking place, the appellant walked over to "meet up" with the man who remained on the street corner.

- 6 -

He and the appellant had a brief conversation, during which he handed the appellant something "cupped" in his hand. Both interactions were very short, lasting less than a minute each time.

An officer's observation of a hand-to-hand transaction is a factor supporting a finding of reasonable suspicion. See Lawson v. Commonwealth, 55 Va. App. 549, 555-56, 687 S.E.2d 94, 97 (2010) (finding that officer's viewing hand-to-hand transactions, along with other suspicious activity over a two-week surveillance period, provided reasonable suspicion for investigatory stop); Kidd v. Commonwealth, 38 Va. App. 433, 443-44, 565 S.E.2d 337, 342 (2002) (finding that officer's viewing a hand-to-hand transaction was a factor in providing reasonable suspicion for investigatory stop, despite the fact that the officer could not see or identify the object exchanged); Peguese v. Commonwealth, 19 Va. App. 349, 352, 451 S.E.2d 412, 414 (1994) (*en banc*) (finding that officer's viewing group of men conducting hand-to-hand transactions over the course of an hour provided reasonable suspicion that the defendant, driver of a vehicle where passenger engaged in hand-to-hand transaction with group, was involved in drug activity). In this case, the officers saw two hand-to-hand transactions, the second occurring almost immediately after the first. Therefore, the two transactions, occurring in such a short period of time, served as factors to support a reasonable articulable suspicion that the appellant was involved in a drug transaction.

Further, these transactions occurred in the "high-crime" Lafayette area of Norfolk, described specifically as an open-air drug market where drugs could easily be purchased by anyone. "[W]hile a suspect's presence in a high crime area, standing alone, is not enough to support a reasonable particularized suspicion, it is a relevant contextual consideration in a Terry analysis." Whitaker v. Commonwealth, 279 Va. 268, 276, 687 S.E.2d 733, 737 (2010); see also Illinois v. Wardlow, 528 U.S. 119, 124 (2000). Heinzen and Ryan testified that they had previous experience investigating drug activity in this *particular* part of Norfolk. Heinzen had

made approximately ten drug arrests in the Lafayette area. Ryan had personally completed one investigation in south Lafayette, and also had been involved in several "operations" and executed search warrants within a half-mile of the area where the appellant was observed. Thus, the location of the hand-to-hand transaction, as described by the officers, is also a factor that supports the finding of reasonable suspicion that a drug transaction took place.

In addition to their observations and specific knowledge of the area as a high-crime, open-air drug market, both officers testified in detail regarding their training and experience. "[An] officer is . . . entitled 'to view the circumstances confronting him in light of his training and experience, and he may consider any suspicious conduct of the suspected person.'" Andrews v. Commonwealth, 37 Va. App. 479, 491, 559 S.E.2d 401, 407 (2002) (quoting James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996) (citation omitted)); see also United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993) ("Courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street."). "'[A] trained law enforcement officer may [be able to] identify criminal behavior which would appear innocent to an untrained observer.'" Freeman v. Commonwealth, 20 Va. App. 658, 661, 460 S.E.2d 261, 262 (1995) (quoting Taylor v. Commonwealth, 6 Va. App. 384, 388, 369 S.E.2d 423, 425 (1988) (*en banc*)). Further, as our Supreme Court has acknowledged, "[w]hether officers making an investigatory stop are presented with circumstances sufficiently suspicious to satisfy [the] minimum standard is determined by examining the totality of the circumstances in the context of the officer's experience and training." Rudolph v. Commonwealth, 277 Va. 209, 213, 722 S.E.2d 527, 530 (2009); see also United States v. Cortez, 449 U.S. 411, 417-18 (1981).

The record in this case provides abundant evidence of the training and experience of the two officers. Heinzen had been employed by the Norfolk Police Department for eight years, and had been working with the vice and narcotics team for approximately six years. Ryan had been

with the department for thirteen years, with six years on the vice and narcotics team. The officers also specifically testified to their experience in investigating hand-to-hand transactions. Heinzen had witnessed approximately 100 to 200 of such transactions. Ryan had seen at least twenty-five. Both noted that, upon further investigation, these transactions were found to involve drug activity a majority of the time. Heinzen specifically said that about ninety percent of the transactions she investigated were later determined to involve drug activity or resulted in arrests. The officers testified that the particular transaction between the appellant and the man on the street corner was very similar to the other hand-to-hand transactions they had previously investigated. The veteran officers testified in detail regarding their experience with drug investigations, and their specific experience in investigating hand-to-hand transactions, as well as their experience in that area of the city. The officers' extensive training and experience supported their belief that the appellant's actions were likely related to a drug transaction.

The appellant argues that at the time of the traffic stop, the officers did not have sufficient information to provide a reasonable articulable suspicion of a crime. He suggests they only observed "two men in close succession, approach and have a brief encounter with an individual standing on a public sidewalk in the middle of the day with their hands touching or in close proximity." However, as already noted, the record refutes this claim. The evidence, viewed as a whole, provided the officers with reasonable suspicion that the appellant had just engaged in a drug transaction. See, e.g., United States v. Sokolow, 490 U.S. 1, 9 (1989) ("Any one of these factors is not by itself proof of any illegal conduct and is quite consistent with innocent [behavior]. But we think taken together they amount to reasonable suspicion.").

The appellant additionally claims that "[a]ny number of legitimate and innocent explanations would rationally explain [his] observed behavior." The law is clear that "[a] determination that reasonable suspicion exists, however, need not rule out the possibility of

innocent conduct." United States v. Arvizu, 534 U.S. 266, 277 (2002); see also United States v. McCoy, 513 F.3d 405, 413-14 (4th Cir. 2008). Consequently, "[t]he possibility of an innocent explanation for the suspicious conduct does not necessarily forbid an officer from making a brief, investigatory stop." Raab v. Commonwealth, 50 Va. App. 577, 581, 652 S.E.2d 144, 146 (2007) (*en banc*). Here, the circumstances articulated by the officers, viewed in their totality and under the appropriate legal standard, justify a finding of reasonable suspicion. "The degree of certitude required by the reasonable suspicion standard is 'considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less demanding than that for probable cause.'" Morris v. City of Va. Beach, 58 Va. App. 173, 183, 707 S.E.2d 479, 483 (2011) (quoting Perry v. Commonwealth, 280 Va. 572, 581, 701 S.E.2d 431, 436 (2010)). The standard "requires only 'a moderate chance of finding evidence of wrongdoing.'" Shifflett v. Commonwealth, 58 Va. App. 732, 736, 716 S.E.2d 132, 134-35 (2011) (quoting Safford Unified Sch. Dist. No. 1 v. Redding, 557 U.S. 364, 371 (2009)). Therefore, the appellant's argument that his conduct could be traced to legitimate or innocent explanations is unpersuasive. Despite the fact that each act by the appellant, standing alone, might be susceptible to an innocent explanation, the totality of the circumstances provided the officers with a reasonable suspicion that he had engaged in a drug transaction.

The officers articulated sufficient facts to objectively support the conclusion that they had a reasonable suspicion that the appellant was engaged in criminal activity prior to the seizure. The officers were entitled to stop the vehicle in order to confirm or dispel their suspicion that the appellant had just purchased drugs from the individual on the street corner. Consequently, the stop of the vehicle did not violate the appellant's Fourth Amendment rights.

## III.  CONCLUSION

The officers lawfully stopped the appellant based on reasonable articulable suspicion that he had just engaged in criminal activity.  Consequently, the trial court did not err in denying his suppression motion and we affirm the conviction.

<u>Affirmed.</u>