UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys,* Huff and Athey
Argued at Virginia Beach, Virginia

JAMES DOUGLAS WEBB

                                      MEMORANDUM OPINION** BY
v.      Record No. 1745-22-1            JUDGE ROBERT J. HUMPHREYS
                                             FEBRUARY 27, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
COUNTY OF JAMES CITY
Holly B. Smith, Judge

Anthony N. Sylvester for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

James Douglas Webb appeals his conviction for distributing a Schedule I or II controlled

substance, second offense, in violation of Code § 18.2-248. He alleges the circuit court erred in

refusing to suppress the evidence against him, arguing it was the result of an unlawful seizure of his

person. Webb's guilty plea was conditioned on his right to appeal the circuit court's denial of his

motion to suppress.

BACKGROUND

On appeal, we recite the facts "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

---

    * Judge Humphreys prepared and the Court adopted the opinion in this case prior to the
effective date of his retirement on December 31, 2023.

    ** This opinion is not designated for publication. *See* Code § 17.1-413(A).

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

In late July 2021, a James City County homeowner, referred to only as Mr. Dozier, reported to Police Investigator Dave Rochard that he suspected his tenant, Ashley Rogers, was engaging in drug activity at his property on Warrens Pond Road ("the property"). According to Dozier, people came to the property for "short stays" during all hours of the night. Dozier, an elderly man, put Rochard in contact with his caretaker, who reported that people had approached him on the property offering to sell him methamphetamine. The caretaker passed along license plate numbers of visiting vehicles to Rochard, who was familiar with some of the vehicle owners from prior narcotics investigations. Rochard, an experienced narcotics officer who had conducted "thousands" of controlled drug purchases, put together a team of officers to investigate the alleged drug activity at the property, including Police Investigator Joshua Drury and Canine Officer Brett Schultz.

On the evening of August 24, 2021, the team went to the Warrens Pond Road address to conduct surveillance. Rochard positioned his vehicle about 30 yards from the house and watched the property with a pair of binoculars. Schultz and Drury waited slightly further away, with instructions to surveil the vehicles leaving the target property and to conduct interdiction stops.

Shortly after law enforcement's arrival, a black truck came to the property and parked in front of the driveway. It sat, idling with the headlights on, and the driver remained inside. Moments later, a young blonde woman exited the house and approached the truck. She opened the passenger door, which activated the light above the truck cab. As she leaned into the vehicle, Rochard looked through his binoculars and recognized Ashley Rogers from her DMV photograph. After roughly two minutes, Rogers left the vehicle and walked back into the house. Rochard saw

her look at her upturned palm as she walked, and he believed that she was holding something too small to identify.

Rochard relayed the truck's license plate number to the team. Based on the license plate information, Deputy Schulz found that the registered owner of the vehicle, a black F-150, was Webb. Both Rochard and Drury knew Webb from prior drug investigations. Rochard observed the truck leaving the property and turning onto Church Road; he then informed the team of his observations and the truck's movements. Rochard then texted the caretaker, who confirmed that he had frequently seen the black truck at the property.

Drury and Schultz followed the truck from the area of Warrens Pond Road to Richmond Road near Crossover Road, where it pulled into the driveway of another residence. The officers waited on different sides of Richmond Road to intercept the truck when it left. After 15 minutes, the truck left, and Drury and Schultz followed while it headed back towards Warrens Pond Road. When the truck turned onto Church Road, Drury and Schultz stopped the truck. They confirmed Webb was the driver, and Investigator Drury asked questions of Webb while Deputy Schultz did a canine "sweep" of the truck. In a subsequent search of the truck, the officers discovered more than five grams of methamphetamine.

Webb moved to suppress the methamphetamine found in his truck, and alleged that the police seized him without reasonable, articulable suspicion.[1] In a pre-trial suppression hearing, Rochard testified that, based on his training and experience of "thousands of controlled drug buys," he believed that a drug deal had occurred between Rogers and Webb outside the residence on Warrens Pond Road. Rochard stated that the circumstances of the two-minute interaction were

---

[1] Webb's motion to suppress "deal[t] exclusively with the stop of [Webb's] vehicle." He did not allege that the search itself was unlawful, but instead argued that any evidence obtained after the stop should be suppressed. *See Wong Sun v. United States*, 371 U.S. 471 (1963) (holding that evidence obtained as a direct result of illegal governmental conduct is inadmissible against the victim of the misconduct).

consistent with drug activity: the driver chose to remain in the idling vehicle, Rogers did not close the door to her house while she spoke with the driver, and she "look[ed] at something in her hand [when she] walk[ed] back towards the residence." Rochard testified that the circumstances were consistent with the reports of numerous brief visits throughout the night and that it is not uncommon for methamphetamine users to make several purchases in one night. Rochard explained this is because "careful" dealers often only "bring what's asked" and "do not carry more than that." Rochard believed Webb was returning to the property to make another sale after the stop off of Richmond Road to "re-up."

Investigator Drury testified that it was "not uncommon" for a buyer to "provide money" for a "small sample" of narcotics, and then wait for the dealer to go to their supplier to acquire more. He stated that after Rochard informed him of his observations, he suspected that Webb's vehicle was carrying narcotics at the time it was stopped. Like Rochard, Drury was an experienced officer, who had seen or been involved in 800 to 1000 drug transactions in his 18 years in law enforcement.

The circuit court noted that the case involved "multiple individuals" providing information to law enforcement and "ongoing information flowing to investigators for some length of time," which distinguished it from an anonymous tip scenario. The court found that, while "no one identifie[d Webb] as being the driver" of the truck prior to the stop, law enforcement determined the truck belonged to him. It further highlighted that, "while on scene, Investigator Rochard received updated corroboration from the homeowner," that Webb's truck was "a frequent fl[i]er of this particular location." The "unusual conduct" witnessed by the officers, and the team's "pretty significant measure of training and experience" led law enforcement to believe "that a drug deal ha[d] just happened" and "that another one [was] about to take place." Accordingly, the circuit court denied the motion finding that the officers had reasonable, articulable suspicion to stop Webb.

Webb later entered into a written plea agreement permitting him to appeal the circuit court's suppression ruling. The circuit court sentenced Webb to 40 years' incarceration, with 32 years and 4 months suspended. Webb appeals.

## ANALYSIS

"In reviewing the denial of a motion to suppress, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial." *Aponte v. Commonwealth*, 68 Va. App. 146, 156 (2017) (quoting *Hairston v. Commonwealth*, 67 Va. App. 552, 560 (2017)). "It is the appellant's burden to show that when viewing the evidence in such a manner, the trial court committed reversible error." *Id.* (quoting *Hairston*, 67 Va. App. at 560). "While we are bound to review *de novo* the ultimate questions of reasonable suspicion and probable cause, we 'review findings of historical fact only for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Long v. Commonwealth*, 72 Va. App. 700, 712 (2021) (footnote omitted) (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)).

Webb asserts that he was impermissibly seized in violation of his Fourth Amendment rights, and as a result, the methamphetamine found by the police should be suppressed. He contends that the evidence was "replete with assumptions and unsupported conclusions" and officers "lacked a sufficient particularized and objective basis for stopping the vehicle [Webb] was driving." Webb asserts that the officers lacked reasonable, articulable suspicion because they had not established that Webb was the driver until after they stopped his vehicle and that any reasonable suspicion that developed at the observation at Warrens Pond Road dissipated after the truck arrived at the

Richmond Road residence. Further, he alleges the officers could not establish any connection between the Richmond Road residence and drug activity. We disagree.[2]

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." An investigatory stop is one type of seizure that requires Fourth Amendment protections. *Terry v. Ohio*, 392 U.S. 1 (1968). In order to justify the brief seizure of a person to investigate a suspicion, a police officer need not have probable cause; however, he must have "a reasonable suspicion, based on objective facts, that the [person] is involved in criminal activity." *Ewell v. Commonwealth*, 254 Va. 214, 217 (1997) (quoting *Brown v. Texas*, 443 U.S. 47, 51 (1979)). Reasonable suspicion "to justify an investigative stop of a vehicle must be based upon specific and articulable facts of criminal activity." *Mason v. Commonwealth*, 291 Va. 362, 368 (2016) (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

The Virginia Supreme Court has described an "articulable suspicion" as a "conclusion that can be expressed in words sufficient to persuade a reasonable listener to come to a like conclusion." *Id.* at 369.

> The test is not what the officer thought, but rather whether the facts and circumstances apparent to him at the time of the stop were such as to create in the mind of a reasonable officer in the same position a suspicion that a violation of the law was occurring or was about to occur.

*Id.* (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)). "Whether an officer has a reasonable suspicion to justify . . . a detention is 'based on an assessment of the totality of the circumstances.'"

---

[2] Webb also contends on appeal that the searches of his vehicle and person were unlawful under the Fourth Amendment, but he explicitly abandoned this argument in the circuit court. Thus, these arguments are waived by Rule 5A:18. Webb does not ask this Court to invoke the good cause or ends of justice exceptions to Rule 5A:18 on these issues, and the Court will not apply the exceptions sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc).

*Branham v. Commonwealth*, 283 Va. 273, 280 (2012) (quoting *Harris v. Commonwealth*, 276 Va. 689, 695 (2008)). In other words, law enforcement must look at the "whole picture." *Navarette v. California*, 572 U.S. 393, 397 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). A "series of acts," which appear innocent when viewed on an individual basis, may "collectively . . . [be] suspicious enough that a reasonable officer [will] ha[ve] grounds to stop [a defendant] for purposes of investigating the situation further." *Raab v. Commonwealth*, 50 Va. App. 577, 581 (2007) (quoting *Arvizu*, 534 U.S. at 274). This assessment recognizes "the need [for] split-second decisions" and permits an officer "to view the circumstances confronting him in light of his training and experience." *Hill v. Commonwealth*, 68 Va. App. 610, 619 (2018) (quoting *Atkins v. Commonwealth*, 57 Va. App. 2, 19 (2010)), *aff'd*, 297 Va. 804 (2019).

Furthermore, reasonable, articulable suspicion can be based on an officer's personal observations or information supplied by another. *Bland v. Commonwealth*, 66 Va. App. 405, 414 (2016) (quoting *Navarette*, 572 U.S. at 397). When Rochard ordered the stop of Webb's truck, he was acting on information acquired throughout the four weeks leading up to the stop. Dozier and his caretaker had provided information tying Rogers' residence to potential drug activity, and Rochard came to the property to investigate this reported conduct. Rochard witnessed Webb's truck arrive and engage in a short interaction with Rogers, just as his sources described. He confirmed with Dozier's caretaker, in real time, that the truck frequently visited the residence. After the truck left the property, Rochard remained in contemporaneous contact with both Drury and Schultz, staying up-to-date on the truck's movements. Although the officers remained positioned without a line of sight to the truck for 15 minutes after it pulled into the driveway off of Richmond Road, they recognized the same truck pulling back onto Richmond Road and heading back towards Warrens Pond Road.

Rochard testified that he had been a narcotics investigator for over a decade and had observed thousands of drug transactions. He explained these circumstances were consistent with drug activity and that it was common for methamphetamine users to purchase small amounts of drugs multiple times over an evening. Similarly, Drury—also an experienced narcotics investigator—testified that it was common for a user to purchase small amounts of narcotics before making a larger purchase. Both officers testified that in their experience they believed that this vehicle was returning narcotics to Rogers for a subsequent sale.

Based on these circumstances, articulable facts supported a reasonable suspicion to briefly investigate whether the driver of the truck was engaged in the sale of narcotics. While the individual events observed by the officers were not facially illegal, there is no requirement that suspicion be based solely on illegal activity. "The 'mere possibility of an innocent explanation' does not necessarily exclude a reasonable suspicion that criminal activity is afoot." *Hill v. Commonwealth*, 297 Va. 804, 815 (2019) (quoting *Shifflett v. Commonwealth*, 58 Va. App. 732, 736 (2011)). Instead, it was reasonable for the circuit court to find that these seemingly innocent activities were part of a series of acts that, combined, led experienced officers to recognize potential unlawful activity, and to justify brief investigation. *See Raab*, 50 Va. App. at 581.

To the extent that Webb challenges the officers' reliance on the "assumption" that he was the driver and that this reliance fails to establish reasonable suspicion, this assertion is not supported by our precedent. An officer's belief that the registered owner of a vehicle is its driver is a "commonsense inference" and the fact that the registered owner of a vehicle is not always the driver of the vehicle does not negate the reasonableness of the inference. *Mitchell v. Commonwealth*, 73 Va. App. 234, 248-49 (2021) (quoting *Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020)). In any event, it is immaterial that Rochard and his team had not established that Webb was the driver of the vehicle prior to the stop, because the objective facts known to them established a reasonable

suspicion that the driver of the truck was engaged in the sale of narcotics. Based on the totality of the circumstances—and viewing those facts in the light most favorable to the Commonwealth—the officers had reasonable, articulable suspicion to stop Webb.

Accordingly, this Court finds no error in the circuit court's denial of Webb's motion to suppress. Therefore, we affirm the judgment of the circuit court.

*Affirmed.*