COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Fulton and Lorish
Argued by videoconference

UNPUBLISHED

COMMONWEALTH OF VIRGINIA

                                                    MEMORANDUM OPINION[*] BY
v.          Record No. 0360-24-1                    JUDGE LISA M. LORISH
                                                    JULY 16, 2024

WILLIAM LAMONT JONES


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

Jennifer L. Guiliano, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellant.

Nicholas J. Medved, Assistant Public Defender (Catherine A.
Tatum, Senior Trial Attorney; Office of the Public Defender, on
brief), for appellee.


William Lamont Jones was arrested for being a felon in possession of a firearm after an

investigative stop revealed a gun on his waistband. Jones moved to suppress the firearm, arguing

that it was the fruit of an unlawful detention because Newport News Police Officer Christopher

Smith lacked probable cause to arrest him. The Commonwealth argued that probable cause was

not required because Officer Smith had reasonable suspicion that Jones had just committed the

crime of siphoning gas and was permitted to detain him for investigation under the *Terry*[1] line of

cases. The circuit court granted the motion to suppress, concluding that there was no reasonable

suspicion to support a *Terry* detention. We find there was reasonable suspicion, so we reverse.

However, we also remand for the circuit court to evaluate the other argument Jones raised

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

below—that the police procedures used here were so intrusive as to exceed the bounds of a lawful *Terry* detention.

BACKGROUND[2]

Newport News Police Officer Smith was on duty and working security at The Alley, a nightclub. At about 1:00 a.m., the head of the private security team for The Alley told Officer Smith that Jones had been siphoning gasoline from a vehicle in The Alley's parking lot. Officer Smith and several other members of the private security team, as well as several other police officers who were also on duty and working security for the Alley that night, all began walking towards Jones. At the time, Jones was in The Alley's parking lot, carrying a red gasoline container and walking away from a member of the security team who was following him.

Officer Smith said, "Hey, bro," in the direction of Jones, who continued to walk without stopping. Officer Smith then asked a member of The Alley's private security team, "What do you guys have on him?" The member replied, "Siphoning gas." Officer Smith immediately ran towards Jones and made physical contact with him five seconds later, taking him to the ground. Officer Smith did not announce himself as a police officer or issue any commands to Jones before he ran towards him. Only after Jones was on the ground did Officer Smith say, "Police, put your hands behind your back," and then handcuff Jones. Indeed, Officer Smith's body cam, which began recording just before Officer Smith called out "Hey, bro," in Jones's direction, revealed that Jones was on the ground and handcuffed thirty seconds after the security team member said the phrase "siphoning gas." When Officer Smith helped Jones stand up, he

---

[2] Because Jones was the prevailing party below, we recite the facts in the light most favorable to Jones. *Commonwealth v. Grimstead*, 12 Va. App. 1066, 1067 (1991) (citing *Commonwealth v. Holloway*, 9 Va. App. 11, 20 (1989)).

removed a firearm from the waistband on the right side of Jones's body. The Commonwealth indicted Jones for possessing a firearm as a felon in violation of Code § 18.2-308.2.

Jones moved to suppress the firearm, arguing that he was detained in violation of his rights under the Fourth Amendment of the United States Constitution. Specifically, Jones argued that Officer Smith arrested him without probable cause. Jones first contended that Officer Smith's search had proceeded entirely based on "the say-so of a third party" and that this was insufficient under the Fourth Amendment. He also claimed that the detention amounted to a "warrantless attack, pulling someone down to the ground on private property" and that if the same thing had happened to an officer, "it would be described as a violent assault." That is, Jones argued both that this was not a valid *Terry* stop because Officer Smith relied on information relayed by a civilian and that "even if this were a *Terry* stop, the way that he went about doing it would be improper as well." On this latter point, Jones argued that *Terry* authorized only "reasonable measures to secure that investigative detention."

The Commonwealth countered that Officer Smith had reasonable suspicion because, in addition to learning about the siphoning from the security team, Officer Smith also personally observed Jones with the gas can. The Commonwealth also argued that Jones was "not tackled initially," but that after Officer Smith placed a hand on Jones there was a "collapsing motion." Acknowledging that "what's most troubling about this interaction is perhaps the perceived tackling," the Commonwealth pointed to three cases where federal appellate courts upheld a *Terry* stop "effectuated by a tackle." Following the hearing, the Commonwealth submitted a letter with additional authority for using reasonable force in a *Terry* detention.

The trial court issued an opinion after the hearing, making detailed factual findings that are summarized above, before concluding that there was no reasonable suspicion for a *Terry* detention. The court noted that "[n]o argument or evidence was presented to the Court on the

veracity or reliability of the member of The Alley's private security team that told [Officer] Smith that [Jones] was siphoning gas" and that Officer Smith had testified that "all of the information he received . . . was received from members of The Alley's private security team." In addition, "[n]o tool that would enable or assist [Jones] in siphoning gasoline was ever recovered or admitted in evidence for the Court's consideration." For these reasons, the court concluded that Officer Smith did not have a "particularized and objective basis" that Jones was engaged in criminal activity.

The court also observed that "[Officer] Smith short circuited the process required by the Fourth Amendment and placed [Jones] under arrest by taking him to the ground and placing him in handcuffs before he possessed reasonable suspicion to detain the Defendant" and that this was "not the type of brief investigatory detention that was envisioned by the United States Supreme Court in *Terry*." Yet the court expressly limited its holding to only whether there was reasonable suspicion, underscoring that "the Commonwealth has submitted supplemental authority in support of its argument at the hearing that, when necessary, physical force may be used to effectuate a *Terry* stop" but that "because of the Court's ruling that [Officer] Smith did not possess reasonable suspicion to detain [Jones], the Court finds that it is not necessary to rule on this issue."

The Commonwealth appeals this ruling under Code § 19.2-398.

ANALYSIS

The Commonwealth contends that the trial court erred in concluding that Officer Smith had to have personal knowledge that Jones had siphoned gas to possess reasonable suspicion. Instead, the Commonwealth argues that Officer Smith properly could have relied on the report he had just received from members of the security team—a report that was corroborated by Officer Smith's personal observation of Jones carrying a gas can.

- 4 -

A Fourth Amendment challenge like this one presents a mixed question of law and fact that we review de novo on appeal. *Murphy v. Commonwealth*, 264 Va. 568, 573 (2002). In conducting our review, "we defer to the trial court's findings of 'historical fact'" unless such findings are "plainly wrong or devoid of supporting evidence." *Barkley v. Commonwealth*, 39 Va. App. 682, 690 (2003) (quoting *Davis v. Commonwealth*, 37 Va. App. 421, 429 (2002)). In doing so, we are required to "give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc).

The United States Supreme Court has held that "a police officer may, without violating the Fourth Amendment, make a brief investigatory stop of a person when the officer has a reasonable suspicion, based on objective facts, that criminal activity may be afoot." *Mason v. Commonwealth*, 291 Va. 362, 367 (2016) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "Whereas full-scale arrests must be based on probable cause, these 'brief investigatory stops,' now known as *Terry* stops, 'must be based on specific and articulable facts which, taken together with rational inferences from these facts, reasonably warrant a limited intrusion.'" *Turay v. Commonwealth*, 79 Va. App. 286, 297 (2023) (en banc) (quoting *Iglesias v. Commonwealth*, 7 Va. App. 93, 99 (1988)).

To have reasonable suspicion, a police officer need only have a "'minimal level of objective justification' for making . . . a stop." *Branham v. Commonwealth*, 283 Va. 273, 280 (2012) (quoting *I.N.S. v. Delgado*, 466 U.S. 210, 217 (1984)). Reasonable suspicion "need not rule out the possibility of innocent conduct." *Turay*, 79 Va. App. at 298 (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)). Instead, "the principal function of [the] investigation is to resolve that very ambiguity . . . to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.'" *Morris v. City of Va.*

- 5 -

*Beach*, 58 Va. App. 173, 183 (2011) (quoting *Raab v. Commonwealth*, 50 Va. App. 577, 582 (2007)).

"In determining whether a police officer had the 'minimal level of objective justification' to justify such a stop, we consider 'the totality of the circumstances,' and 'we eschew any "divide-and-conquer analysis" that ignores the "totality of the circumstances."'" *Turay*, 79 Va. App. at 298 (first quoting *Bland v. Commonwealth*, 66 Va. App. 405, 413-14 (2016); and then quoting *Shifflett v. Commonwealth*, 58 Va. App. 732, 740 (2011) (internal quotation omitted)). "Our analysis is always limited to the 'facts available to the officer at the moment of the seizure,' *Terry*, 392 U.S. at 21-22, and does not consider information learned *after* the person was detained." *Id.* at 299. These facts may arise from "an officer's personal observations or information supplied by another." *Bland*, 66 Va. App. at 414 (citing *Navarette v. California*, 572 U.S. 393, 397-98 (2014)). As the Supreme Court explained in *Navarette*, that Court has "firmly rejected the argument 'that reasonable cause for a[n investigative stop] can only be based on the officer's personal observation, rather than on information supplied by another person.'" 572 U.S. at 397 (alteration in original) (quoting *Adams v. Williams*, 407 U.S. 143, 147 (1972)).

When information supplied by another forms the basis for a *Terry* stop, a reviewing court must consider the "veracity of the informant and the basis of his or her knowledge regarding a particular tip, taking into account the facts known to the officers from personal observation." *Reed v. Commonwealth*, 36 Va. App. 260, 267 (2001) (citations omitted). For example, information from a "disinterested citizen who is either a victim of or eyewitness to, a crime" may receive more weight by an officer than "information from a 'criminal' informer, whose motives are less likely to be pure." *Id.* Information from a "'known informant whose reputation can be assessed and who can be held responsible if [his] allegation turns out to be fabricated' may, standing alone, provide sufficient indicia of reliability to provide an officer with reasonable

suspicion to make an investigatory stop." *Id.* (alteration in original) (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000)); *see also United States v. Christmas*, 222 F.3d 141, 144 (4th Cir. 2000) ("[C]itizens who pe[r]sonally report crimes to the police thereby make themselves accountable for lodging false complaints.").

Finally, when an officer encounters a suspect "not in the vacuum of routine patrol activity, but against the backdrop of that recently reported crime," the "reviewing court must consider the general reasonable suspicion factors discussed above in relation to the reported crime." *Turay*, 79 Va. App. at 300. In such a context, "geographic and temporal proximity to the reported crime is vital." *Id.* "The shorter the distance and closer to the timing to a specific reported crime, the greater the value of proximity to the reasonable suspicion calculus." *Id.*

Viewed in the light most favorable to Jones, the prevailing party below, the evidence establishes that the facts available to Officer Smith at the time of the seizure were: (1) a report from the head of The Alley's security team that Jones had siphoned gas; (2) Officer Smith's observation that Jones was walking away while carrying a red gasoline container; (3) Officer Smith's observation that Jones did not respond or stop walking when he called out "Hey, bro" in the direction of Jones; (4) the statement by another member of security team, in response to Officer Smith's question, that Jones was "siphoning gas"; and (5) that it was early in the morning in a high-crime area.

Considering the totality of the circumstances, Officer Smith had reasonable suspicion that Jones had committed the criminal offense of siphoning gas from a vehicle in the parking lot of The Alley. He received reports from two members of The Alley's private security team that Jones had, just minutes before, siphoned gas from a vehicle in the parking lot. Officer Smith was working with the security team that night, while on duty with the Newport News Police Department. As a result, the security team members who made reports of a recent crime were

"known" to Officer Smith. It is true that the record does not contain information about who saw Jones siphon the gas, or more information about the veracity and reliability of the security team members who made the report. But our caselaw does not require more where the officer has personally observed information that corroborates the tip.

As we have explained,

> [e]ven if the informant is not anonymous and some indicia of his personal reliability exists because of the face-to-face confrontation, the officer still must have some objective basis for assessing the reliability of the informant's knowledge of the information contained in his report in order to establish a reasonable and articulable suspicion to stop the suspect.

*Beckner v. Commonwealth*, 15 Va. App. 533, 535-36 (1993). In a case where a witness who personally observed a break-in called the police with a description of the suspect and stayed on the line with the police dispatcher while continuing to follow that suspect from a distance until an officer arrived on the scene, we found that the officer had reasonable suspicion to detain the suspect. *Reed*, 36 Va. App. at 267. "The informant's information, coupled with his continuing assistance in locating appellant, which confirmed his proximity to the scene of the stop, and the officers' partial corroboration that a crime had occurred, provided reasonable suspicion for the stop." *Id.* at 269. Contrast a case where an unknown citizen informant told a police officer that there was a "white female, who did not have a driver's license, at a nearby gas station on Campbell Avenue pumping gas into a 1966 Chevrolet," and the officer did not personally observe anything "unlawful about her driving" before pulling her over. *Beckner*, 15 Va. App. at 534. Even though the woman was found not to have a license, we concluded that the officer lacked reasonable suspicion because "the informant must provide some basis for his knowledge before the police officer relies upon it as being reliable enough to support an investigatory stop," and absent this, the informant's information amounted to a "mere hunch." *Id.* at 537.

- 8 -

Here, members of the security team reported to Officer Smith that Jones had siphoned gas in the parking lot of The Alley. There was no apparent delay in making the report. Officer Smith personally observed Jones in the parking lot within moments of receiving the report, walking away while carrying a red gas can. A member of the security team trailed closely behind him. Given these circumstances, we cannot say that Smith was acting on a "hunch" when he stopped Jones. Instead, relying on a contemporaneous report from known members of the security team, and after personally observing Jones with a gas can in the parking lot, Officer Smith had reasonable suspicion for the stop.

Our Supreme Court has repeatedly cautioned that reasonable suspicion is "not an exacting" standard. *Hill v. Commonwealth*, 297 Va. 804, 815 (2019) (quoting *Braun v. Maynard*, 652 F.3d 557, 561 (4th Cir. 2011)). The "'mere "possibility of an innocent explanation"' does not necessarily exclude a reasonable suspicion that criminal activity is afoot." *Id.* (quoting *Shifflett*, 58 Va. App. at 736). Phrases like "may have been" and "could have been" "reflect the [doctrine's] appropriate probabilistic formulation." *Id.* For this reason, the possibility that members of the security team may have falsely reported that Jones siphoned gas, layered upon the chance that Jones could have been walking away at 1:00 a.m., with a gas can, does not defeat reasonable suspicion here.[3] Accepting the trial court's factual findings, we nevertheless conclude that the trial court erred in concluding that Officer Smith lacked reasonable suspicion to detain Jones.

Jones also argues that, even if Officer Smith had reasonable suspicion, the detention itself was unreasonable, and exceeded the lawful bounds of a *Terry* stop. In essence, Jones argues that

---

[3] That no charges were brought against Jones for siphoning gas does not change the reasonable suspicion analysis, as we consider only what was known to the officer prior to the detention. *See Curley v. Commonwealth*, 295 Va. 616, 622 (2018) (recounting that only information known to an officer prior to a search is relevant to Fourth Amendment analysis).

we should affirm the trial court for a different reason. But the "right result, different reason" doctrine cannot be used to affirm a judgment when "the trial court has . . . confined its decision to a specific ground" such that "further factual resolution is needed before the right reason may be assigned to support the trial court's decision." *Perry v. Commonwealth*, 280 Va. 572, 579 (2010) (quoting *Whitehead v. Commonwealth*, 278 Va. 105, 115 (2009)). We have recognized that "police procedures [during a *Terry* stop] can . . . be so intrusive . . . as to trigger the full protection of the Fourth and Fourteenth Amendments." *DePriest v. Commonwealth*, 4 Va. App. 577, 586 (1987) (quoting *Hayes v. Florida*, 470 U.S. 811, 815-16 (1985)). At the same time, "[t]o protect themselves during a valid *Terry* stop, police officers have a right to draw their weapons, to handcuff a suspect, or even to threaten to use force if the circumstances reasonably warrant it." *Jackson v. Commonwealth*, 39 Va. App. 624, 651 (2003) (citing *Thomas v. Commonwealth*, 16 Va. App. 851, 857 (1993)). "There is no "litmus-paper test for distinguishing . . . when a seizure exceeds the bounds of an investigative stop." *DePriest*, 4 Va. App. at 586 (quoting *Florida v. Royer*, 460 U.S. 491, 506 (1983)).

As Jones argued below, there are cases from other jurisdictions that have concluded that "tackling" a suspect as part of a *Terry* detention was justified under certain circumstances. There are also cases that go the other way.[4] Here, the trial court expressly refused to decide whether the amount of force used in the detention was excessive, and the record lacks factual findings about several factors that might be relevant to that determination. For this reason, we remand for the trial court to address this issue.

---

[4] Professor LaFave has catalogued fact-specific decisions from other jurisdictions addressing the use of force in the *Terry* context. Wayne R. LaFave, *Search and Seizure* § 9.2(d) (6th ed. 2024 update).

CONCLUSION

For these reasons, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

*Reversed and remanded.*